497 So.2d 450 (1986)
Ezzie Charles WALLACE
v.
ALABAMA POWER COMPANY, A Corporation.
FIDELITY & CASUALTY COMPANY
v.
ALABAMA POWER COMPANY, A Corporation.
83-732, 83-750.
Supreme Court of Alabama.
September 19, 1986.
Rehearing Denied November 7, 1986.
*451 Joseph J. Boswell, Mobile, for appellant Ezzie Charles Wallace.
A. Danner Frazer, Jr., and Patricia A. Davis of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, for intervenor Fid. & Cas. Co.
John P. Scott, Jr., of Balch & Bingham, Birmingham, and Carroll H. Sullivan of Gaillard, Little, Hume & Sullivan, Mobile, for appellee.
*452 PER CURIAM.
These appeals are from the trial court's denial of the plaintiffs' motions for a new trial and the motion of one of the plaintiffs for a judgment notwithstanding the verdict. The appellants cite as error several of the trial court's rulings during the course of the trial. After considering each of their arguments, we reverse and remand.
On August 23, 1977, Ezzie Charles Wallace was working as a roofer in Mobile. While making repairs to the roof of Building # 274 in the Brookley Industrial Complex, he came in contact with, or in close proximity to, power lines owned by Alabama Power Company. As a result of the accident, he suffered severe injuries that required the amputation of both of his arms at the mid-forearm level. Wallace filed this suit in October 1977, alleging that the defendant's negligence in furnishing electricity through the wires at Building # 274 caused his injuries. Wallace received workmen's compensation benefits from his employer's insurer, Fidelity & Casualty Company. Fidelity & Casualty was granted permission by the trial court to intervene in this action to protect its right of subrogation.

Issue 1
Wallace contends the trial court abused its discretion by failing to dismiss a juror for cause. Louise I. Douglas, a member of the prospective juror panel, stated that she owned 100 shares of stock in the Southern Company, the parent company of Alabama Power. The trial judge asked her if her ownership of that stock would affect her ability to render a fair verdict based solely on the evidence admitted at trial, and she answered, "No, I'm sure it wouldn't." Denying Wallace's challenge of Mrs. Douglas for cause, the trial judge stated:
"Considering the number of shares in the Southern Company, one hundred shares is a rather insignificant number. The Court will not grant the motion to strike for cause and sustain the objection to the striking for cause of Mrs. Douglas, especially in the light of her statement that it would not influence her and that she could be selected as a juror and render a fair and just verdict based solely on the evidence in the case."
With respect to challenges for cause, this Court has followed the rule stated in Brown v. Woolverton, 219 Ala. 112, 115, 121 So. 404, 406 (1928):
"To justify a challenge for principal cause there must be a statutory ground, or some matter which imports absolute bias or favor, and leaves nothing for the discretion of the court."
The statutory challenges for cause are set out in Alabama Code (1975), § 12-16-150. Wallace argues that part (12) of § 12-16-150 disqualifies a stockholder of a corporation that is a party to the suit from serving as a juror. Part (12) states:
"It is good ground for challenge of a juror by either party:
"...
"(12) That the juror, in any civil case, is an officer, employee or stockholder of or, in case of a mutual company, is the holder of a policy of insurance with an insurance company indemnifying any party to the case against liability in whole or in part or holding a subrogation claim to any portion of the proceeds of the claim sued on or being otherwise financially interested in the result of the case." (Emphasis added.)
Wallace argues that Douglas, as a stockholder of the Southern Company, is "financially interested in the result of the case" and should be removed for cause.
Alabama Power argues that this statute applies only to an interest in an insurance company and not to an interest in any type of corporation. To support this argument, several cases are cited: Mims v. Mississippi Power Co., 282 Ala. 90, 209 So.2d 375 (1968); Mitchell v. Vann, 278 Ala. 1, 174 So.2d 501 (1965); Louis Pizitz Dry Goods Co. v. Cusimano, 206 Ala. 689, 91 So. 779 (1921). A reading of these cases does not indicate that the statute is specifically limited to stockholders or others financially interested in an insurance company. However, *453 in Welborn v. Snider, 431 So.2d 1198, 1201 (Ala.1983), this Court in applying subsection (12) of the statute stated:
"This Court has held that, although the above code section gives a party a challenge for cause against a juror with a financial interest in an insurance company with which a party has a policy, the party who wishes to exercise the challenge does not have to do so blindly, nor does he have to challenge for cause all such prospective jurors."
Part (12) of the statute is limited to those persons who are financially interested in insurance companies. We have not found a case in Alabama where this part of the statute was applied to a juror who was financially interested in a company that was a party to the case other than an insurance company. However, this does not end our inquiry.
Juror Douglas should have been removed for cause because she falls into a class of challenges for cause that existed at common law. In addition to the statutory challenges for cause, Alabama recognizes challenges for cause that existed at common law. See Mitchell v. Vann, supra. The common law challenges for cause are set out in Brown v. Woolverton, supra. A common law challenge for cause must involve "some matter which imports absolute bias or favor, and leaves nothing for the discretion of the court." Brown v. Woolverton, supra (emphasis added). Thus, the question is whether the ownership of stock in the parent corporation "imports absolute bias or favor" on the part of the prospective juror.
The general rule with respect to stockholders of a corporation sitting as jurors in a case in which the corporation is involved is stated as follows:
"A stockholder in a corporation is incompetent to act as a juror in a case in which the corporation is a party or has any direct pecuniary interest.... Also one who is a stockholder of a corporation which owns stock in another corporation which is a party to an action cannot serve as juror in such a case."
50 C.J.S. Juries § 213, at 949-50 (1947). See also, 47 Am.Jur.2d Jury § 325, at 896 (1969).
A number of jurisdictions have adopted and followed this rule in order to provide both parties with fair and impartial juries. See, Thompson v. Sawnee Electric Membership Corp., 157 Ga.App. 561, 278 S.E.2d 143, 144 (1981); Salina v. Commonwealth, 217 Va. 92, 225 S.E.2d 199, 200 (1976); Southern Bell Telephone & Telegraph Co. v. Shepard, 262 S.C. 217, 204 S.E.2d 11, 12 (1974); Ozark Border Electric Cooperative v. Stacy, 348 S.W.2d 586, 588 (Mo.App. 1961); Texas Power & Light Co. v. Adams, 404 S.W.2d 930, 943 (Tex.Civ.App.1966). See also, Gladhill v. General Motors Corp., 743 F.2d 1049, 1050 (4th Cir.1984); Chestnut v. Ford Motor Co., 445 F.2d 967 (4th Cir.1971). It appears from the reading of each of these cases that the stockholder/juror may be "excused for cause" because of the "direct" interest he has in the defendant corporation. In two of these cases, it appears that this "direct" interest extends to stockholders who own stock in parent or holding companies.
In Texas Power & Light Co. v. Adams, supra, the challenged juror was shown to own stock in a holding company which owned all the stock in the plaintiff corporation. The Texas Court of Civil Appeals upheld the trial court's decision that the juror was incompetent to serve in the case. The trial court had relied on a statute which disqualified any person from serving as a juror in a suit in which he was interested, directly or indirectly, in the subject matter. The Court of Civil Appeals held that "[w]here a corporation is a party to the suit, its stockholders are necessarily interested in the result." 404 S.W.2d at 943.
In Southern Bell Telephone & Telegraph Co. v. Shepard, supra, the trial court refused to allow inquiry into whether any juror was a stockholder in Southern Bell or American Telephone and Telegraph Company, its parent corporation. A South Carolina statute provided that the trial court was required to allow inquiry into *454 whether a juror "has any interest in the cause." The South Carolina Supreme Court, citing the general rule that a stockholder is incompetent to serve as a juror in a case in which the corporation is a party or has any pecuniary interest, reversed the trial court's judgment. The court wrote the following: "Here, the appellant had the legal right to ascertain whether or not the jury, or any member thereof, had an interest in the cause as a stockholder of either Southern Bell or American Telephone and Telegraph Company." (Emphasis added.) 204 S.E.2d at 12.
We hold that juror Douglas should have been removed for cause, and it was error for the trial court not to do so.
The question we are now faced with is whether the trial judge erred to reversal in denying Wallace's challenge for cause of juror Douglas.
We are convinced that the error requires reversal. Although the disqualified juror did not serve on the jury, the trial court's refusal to discharge her for cause required Wallace to use one of his peremptory strikes to eliminate her. This requires reversal. In Southern Railway Co. v. Milan, 240 Ala. 333, 199 So. 711 (1940), the Court held that it was reversible error where the defendant, who unsuccessfully challenged the prospective juror for cause, was required, in order to eliminate the disqualified juror, to exercise a peremptory strike. The court rejected the argument that the error was harmless and held that it deprived the defendant of a valuable right.
In this case, the fact that there were 29 qualified jurors from which to strike does not cure the error. Plaintiff Wallace was entitled to a list of qualified jurors from which to strikenot one which included unqualified persons.
The dissenters' reliance on § 12-16-140, Code 1975, for their harmless error argument is misplaced. That statute authorized a method of jury selection from a list of 24no more and no less. Providing the parties with a list of 28 instead of 24 was held to be reversible error where the method of selection was under this section. Brilliant Coal Co. v. Barton, 203 Ala. 38, 81 So. 828 (1919).
Rule 47(b), A.R.Civ.P., under which the jury in this case was selected, now governs the selection of jurors. It provides:
"Regular jurors shall be selected from a list containing the names of at least twenty-four competent jurors and shall be obtained by the parties or their attorneys alternately striking one from the list until twelve remain, the party demanding the jury commencing.
"...
"When the court has determined the total number of jurors, including alternates, to be impaneled and has imparted that information to counsel and the clerk, the parties will proceed to strike the jury."
In the present case, the court required the parties to strike peremptorily from a list of 30. They were, therefore, entitled to a list of 30 qualified persons before striking was begun. O'Rear v. State, 188 Ala. 71, 66 So. 81 (1914).

Issue 2
Wallace also contends that the trial judge erred by failing to have the parties sign a waiver of any objections to the judge's ownership of approximately 125 shares of Southern Company stock. The trial judge disclosed his ownership of the stock, as required by Canon 3(C)(1)(c), Alabama Canons of Judicial Ethics, and stated that it would not affect his ability to preside over the lawsuit. The parties and their attorneys orally agreed to have the trial judge continue and hear the case, and they waived their objections at that time. Wallace now argues that the waiver is ineffective because it was not reduced to writing, as required by Canon 3(D).
The trial judge in Guthery v. Guthery, 409 So.2d 844 (Ala.Civ.App.1981), cert. denied, 459 U.S. 830, 103 S.Ct. 68, 74 L.Ed.2d 68 (1982), a suit for divorce, disclosed that he was related to one of the attorneys. (See Canon 3(C)(1)(d), Alabama *455 Canons of Judicial Ethics.) The parties orally agreed to allow him to hear the case. On appeal, the husband brought a Rule 60(b)(6), A.R.Civ.P., motion to have the divorce decree set aside because the waiver was not put in writing and signed by the parties. The Court of Civil Appeals held that the husband failed to show any prejudice from the method the trial judge used to disclose his interest, and affirmed. "Even though technically the trial judge erred in not requiring the disqualification to be remitted in writing and incorporated in the record, husband has not shown that he was prejudiced by the method used by the trial judge to remit his disqualification. Rule 45, A.R.A.P." 409 So.2d at 846. In the instant case, counsel for Wallace stated in an affidavit that the trial judge did not manifest any bias or prejudice in favor of the defendant during the trial. In the absence of such a showing, we are obliged to affirm. Rule 45, A.R.A.P.

Issue 3
Wallace argues that the trial judge erred in sustaining an objection to the introduction of testimony tending to show that the defendant had raised its power lines after the accident occurred. The general rule in Alabama is that evidence of subsequent remedial measures is inadmissible to show a party's negligence. Standridge v. Alabama Power Co., 418 So.2d 84 (Ala.1982). The trial judge granted the defendant's motion in limine to exclude any testimony concerning the movement of the lines at Building # 274 after the measurement taken by the defendant on August 24, 1977.
The defendant called and qualified an expert witness to testify about the placement of the power lines in question. On direct examination, the expert was asked to give his opinion, based on the depositions of Wallace and another crew member who was present at the time of the accident, on photographs taken at the scene, and on facts presented to him by the attorney for the defendant, including the measurements made in 1977. He testified that, given the data provided, the lines in question were constructed in accordance with National Electrical Safety Code standards. On cross-examination, Wallace's attorney asked the expert witness whether the measurements he made when he visited the scene in 1983 varied from the 1977 measurements. The appellants contend the testimony should have been admitted for the purpose of impeaching or lessening the weight of the expert's testimony on direct examination. We do not agree. While the defendant's expert may have factored in his personal observations of the scene as it existed in 1983, the predicate laid by the defendant's attorney was explicit enough to allow the witness to formulate an opinion based solely on those facts. The prejudice that would have resulted from introducing evidence of subsequent remedial measures taken by the defendant outweighs any probative value the testimony might have had.
While we have recognized several exceptions to the general rule stated above, including a ruling that evidence of subsequent remedial measures may be introduced for impeachment, Norwood Clinic, Inc. v. Spann, 240 Ala. 427, 199 So. 840 (1941), we shall not allow the exceptions to undo the rule. The appellants cite Stauffer Chemical Co. v. Buckalew, 456 So.2d 778 (Ala.1984), where we approved the introduction of such evidence to contradict the testimony offered by the defendant that it had taken all reasonable care in inspecting ladders used by its electrical crew, a member of which was injured when one of those ladders collapsed. Upon a subsequent inspection, a number of the ladders were determined to be unfit and were thrown away. Stauffer Chemical sought to have evidence of that inspection report and of the disposal excluded. The trial court held it admissible to impeach the testimony of a member of the inspection crew who had testified that some of the ladders were bad before the accident, even though the pre-accident inspection reports did not reveal that observation. No similar need exists in the case now before us.

*456 Issue 4
The appellants' next argument is based on the "collateral source" rule. That rule requires the exclusion of any evidence of a plaintiff's collateral insurance benefits in a suit against a third-party tortfeasor. C. Gamble, McElroy's Alabama Evidence, § 189.04(2) (3d ed. 1977). We have held that "any showing that the plaintiff has received insurance benefits for his injuries is prejudicial to his case and should not be admitted." Mathews v. Tuscaloosa County, 421 So.2d 98, 100 (Ala.1982). The appellants contend that the trial judge erred in allowing the defendant to comment upon, and to introduce evidence of, the plaintiff's workmen's compensation benefits. They also contend that the trial judge should not have mentioned workmen's compensation in his charge to the jury.
Wallace's attorney elicited the first testimony about workmen's compensation. During his direct examination of Wallace's sister, he asked her if she had received payment for taking care of Wallace since his injury. She stated that she had been paid by the workmen's compensation carrier through Wallace's attorney, who held Wallace's workmen's compensation funds in trust. Thereafter, during his direct examination of Wallace, the attorney asked how much he had received from the workmen's compensation carrier since his accident, and Wallace answered $240 biweekly.
Later, when the defendant's attorney asked Wallace whether he expected to receive benefits in the future, Wallace's attorney objected and stated, in front of the jury, that Wallace's workmen's compensation benefits were limited to a 500-week maximum. Prior to the closing arguments, Wallace's attorney admitted to the trial judge that he had been mistaken in his contention that the benefits were limited to 500 weeks. Because of the confusion surrounding that alleged limitation, the trial judge explained to the jury the rudiments of workmen's compensation and why Fidelity & Casualty is a party to this action. When the judge informed the attorneys of his intention to charge the jury on workmen's compensation, Wallace's attorney stated:
"I object to it, but I ask the Court to please emphasize, not just read the law, but to explain the law to them that if they award $39,000, then that goes to the workman's comp carrier. If they award $500,000.00, then the workman's comp carrier has no obligation to pay anything further until the monthly benefits have been exhausted up to that amount. These folks are trying to take advantage of the collateral source rule that they are not entitled to take advantage of."
The appellants' argument is unpersuasive. "A party cannot introduce evidence, object unsuccessfully to the same evidence when introduced by an opposing party, and then successfully claim error on appeal." Hayes v. Newton Bros. Lumber Co., 481 So.2d 1123, 1126 (Ala.1985).

Issue 5
The defendant called Oscar Powell, the foreman of Wallace's roofing crew, as a witness. He testified that he saw Wallace touch the power lines with his roofing knife just before he was injured. On cross-examination, Wallace's attorney attempted to show Powell's bias and also to prove a motive to change his testimony by eliciting testimony that Wallace's sister had refused Powell's social invitations. Wallace contends that the trial judge erred by sustaining the defendant's objection to this line of questioning.
"The trial court has discretion to determine whether such facts tending to show bias are to be admitted into evidence." Alabama Power Co. v. White, 377 So.2d 930, 939 (Ala.1979); C. Gamble, McElroy's Alabama Evidence, § 149.01(2) (3d ed. 1977). We do not believe the trial court abused its discretion by refusing to allow this line of questioning.

Issue 6
Finally, Wallace argues that the trial court erred in refusing to give one of his requested instructions to the jury, and in *457 granting one of the defendant's instructions. Both instructions addressed the defense of contributory negligence. Wallace's instruction would have charged, in relevant part, as follows:
"I charge you members of the jury that the burden is upon the defendant to reasonably satisfy you from the evidence as to the truth of all of the material allegations of [contributory negligence]. I further charge you that mere knowledge by Ezzie Wallace of the danger of being electrocuted ... if contact is made with such lines does not establish contributory negligence on his part. In addition to proving that Ezzie Wallace had knowledge of the danger of being electrocuted... if contact was made with such lines, it is also necessary for Alabama Power Company to prove that Ezzie Wallace was conscious of and appreciated the danger of being shocked by the electric power lines in question ... and that with that knowledge and appreciation, he acted unreasonably."
Alabama Power's is a compendium of several of the Alabama Pattern Jury Instructions. See A.P.J.I, Civil, 28.00 through 28.02 and 30.00 through 30.02, pp. 440-44 and 480-84. The major difference between the charge as given and Wallace's proffered charge is that Wallace's would have included an instruction that, before Wallace could be found to have been contributorily negligent, Alabama Power had "to prove that [Wallace] was conscious of and appreciated the danger of" electrocution.
The distinction between contributory negligence and assumption of the risk is often unclear. We have said a number of times that the three elements essential to contributory negligence are "that the party charged with contributory negligence (1) had knowledge of the condition or failure (2) appreciated the danger and (3) failed to exercise reasonable care in the premises, but with such knowledge and appreciation, put himself into the way of danger." Alabama Power Co. v. Mosley, 294 Ala. 394, 398, 318 So.2d 260, 263 (1975); see also, Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276 (1928). However, we have also said, in explaining the requirements of a showing of contributory negligence, that "the negligence may consist in the failure to appreciate the danger when there is opportunity and knowledge sufficient to stimulate reasonable care in that respect. Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979 [(1917)]." Alabama Power Co. v. Mosley, 294 Ala. at 399, 318 So.2d at 263.
"As the practical equivalent of the term `contributory negligence' one frequently finds in the cases the expression `assumption of risk'. It is said that one who knows and appreciates a danger `assumes the risk' thereof." Mackintosh Co. v. Wells, 218 Ala. at 263, 118 So. at 279. The difference between the two defenses is that, for a party to "assume the risk," it must be shown that he knew and appreciated the specific risk of harm involved. Contributory negligence requires only a showing that the party knew or should have known of the general risk involved. It is not always necessary, in a case involving contributory negligence, that the charge specifically enumerate the three elements listed above. In light of the entire instruction given to the jury in this case, wherein the trial judge defined both negligence and contributory negligence, and explained that what constitutes the exercise of reasonable care in one case may under different circumstances be negligence, we do not think there was reversible error. See Rule 51, A.R.Civ.P.
Because the trial court erred in refusing Wallace's challenge for cause of juror Douglas, the judgment is reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.
MADDOX and STEAGALL, Justices (dissenting).
We agree with the majority that Juror Douglas was not qualified to sit as a juror *458 in this case, but we must respectfully disagree with the holding that her disqualification constituted prejudicial error in this case.
In the instant case, a list of 30 jurors was furnished to each of the parties. From this list counsel for the parties proceeded to strike. Because Alabama Power Company had demanded a jury trial, it struck first, and, after striking alternately, counsel for the parties obtained twelve jurors to try the case. Each party had nine strikes. Wallace used his second strike to remove Douglas from the list. Consequently, at the time Douglas's name was removed from the list, the list contained the names of at least 24 competent jurors; therefore, even though Wallace had exercised one of his strikes to remove Juror Douglas's name from the list, it does not appear to us that the error complained of "has probably injuriously affected [his] substantial rights." Rule 45, Ala.R.App.P.
We are of the opinion that a decision in this case is governed by the provisions of Rule 47, Ala.R.Civ.P., which in pertinent part provides at subsection (b):
"Regular jurors shall be selected from a list containing the names of at least 24 competent jurors and shall be obtained by the parties or their attorneys alternately striking one from the list until 12 remain, the party demanding the jury commencing."
Interpreting Rule 47 in light of the mandate of Rule 1, Ala.R.Civ.P., that all the rules "shall be construed to secure the just, speedy and inexpensive determination of every action," we are of the opinion that in any case in which the parties are provided "a list containing the names of at least 24 competent jurors," Rule 47(b) (emphasis added), then it is harmless error if the list contains more than 24 jurors and one of them is determined later to have been disqualified for cause and the party striking the juror is deprived of a strike he otherwise would have had. The fact that the party striking the juror has fewer, or an unequal number of strikes, when compared with the opposing party, is of no consequence. Any time the list furnished to the parties from which they begin striking contains an odd number of names, the party that commences to strike will have one more strike than the opposing party. In other words, if a list contains 25 names or 35 names and "the party demanding the jury commences the striking," then the party who commences to strike will have one more strike than the opposing party. Is having an unequal number of strikes prejudicial? No. Not unless a party has to use a strike to remove a disqualified juror from a list which contains only 24 names.
One of the purposes behind the revamping of Alabama's judicial system and the adoption of our Rules of Civil Procedure was to remove technicalities from the trial of cases and to speed up the process of having cases decided on their merits. But our dissent does not have to be based upon this salutary principle; it can be bottomed on principles of law that were in effect before these procedural changes were effected.
The facts of this case are somewhat similar to those in the case of Rosenbush Feed Co. v. Garrison, 251 Ala. 245, 37 So.2d 106 (1948):
"This case was tried in the Sixth Judicial Circuit, Tuscaloosa County being the only county in that circuit. Said circuit did not have more than two circuit judges. There were thirty-four jurors summoned and in attendance upon the court during the week in which this case was tried. None of them was engaged in the trial of another case and so far as the court had been able to ascertain they were all competent to try this case. Therefore, the trial court correctly required that two lists be made containing the names of all thirty-four of said jurors and that one of such lists be furnished to each of the parties or their attorneys. From this list of thirty-four names counsel for the respective parties proceeded to strike. The plaintiff, having demanded the jury, struck first and by striking alternately counsel for the respective parties struck from the list the names of *459 twenty-two jurors, thus obtaining twelve jurors to try the case. Each party had eleven strikes. The defendant used his eleventh strike to remove the name of Lester Mills from the list, although in doing so he did not know of the relationship between Mills and one of the attorneys for plaintiff.
"If Mills' disqualification or incompetency had been made known the lists would have contained the names of thirty-three jurors. The plaintiff, having the first strike, would therefore have been entitled to eleven strikes and the defendant ten strikes.
"It appears to us that the record before us affirmatively shows that the defendant was not in any way injured by the inclusion of the name of the disqualified juror on the lists from which the trial jury was obtained.
"There were the names of thirty-three competent jurors on the list, nine more than the minimum number of competent jurors required to be on the list from which the parties can be required to strike. Southern Ry. Co. v. Milan, 240 Ala. 333, 199 So. 711.
"If Mills' name had been removed from the list it would not have affected the number of strikes to which the plaintiff was entitled. Plaintiff, having the first strike, had a right to strike eleven names from the list irrespective of whether there were thirty-four or thirty-three names thereon.
"Nor would the removal of Mills' name from the list have enabled the defendant to use the strike, which he did use to remove Mills' name from the list, to strike one of the jurors who sat on the trial, as defendant's strikes would have been reduced to ten. In other words, the presence of Mills' name on the list did not deprive the defendant of a strike which he could have used to remove another juror from the list if Mills' name had not been thereon.
"We think this case is clearly distinguishable from Southern Ry. Co. v. Milan, supra. In that case the trial court required the defendant, over his objection, to strike from a list on which appeared the name of a disqualified or incompetent juror. The defendant had to use one of his strikes to remove said juror, and from aught that appears the list which was submitted to the parties from which to obtain a jury contained the names of but twenty-four jurors, one of whom was disqualified. Since the parties cannot be required to strike from a list which does not contain the names of twenty-four competent jurors, this court would not apply the doctrine of error without injury, although the disqualified juror did not serve on the jury which tried the case. But as before indicated, such is not the instant case.
"Since Mills did not serve on the jury which tried the case, and since the list of jurors from which the jury was obtained contained the names of more than twenty-four competent jurors, and since the presence of Mills' name on the list did not affect the number of strikes to which plaintiff was entitled nor deprive the defendant of a strike which he could have used to remove another juror's name from the list if Mills' name had not been on the list, we hold that the trial court correctly refused to grant a new trial to defendant on the ground that Mills' name was on the list from which the jury was obtained."
If Douglas's name had been removed from the list for cause, still 29 names would have been on the list, which is five more than the minimum number of competent jurors required to be on the list. See Southern Railway Co. v. Milan, 240 Ala. 333, 334, 199 So. 711, 712 (1940); see also Alabama Code (1975), § 12-16-140, and Rule 47, Ala.R.Civ.P. Alabama Power would have had a right to strike nine names, while Wallace would have had eight strikes. Therefore, the removal of Douglas's name would simply have meant that Wallace would have had one less strike than he had with her name on the list; in effect, he used a strike to remove her name and when he did so he was in exactly the same position he would have been in if *460 Douglas's name had been removed for cause. "In other words, the presence of [Douglas's] name on the list did not deprive [Wallace] of a strike which he could have used to remove another juror from the list if [Douglas's] name had not been on the list." Rosenbush Feed Co. v. Garrison, 251 Ala. 245, 249, 37 So.2d 106, 110 (1948).
We think this case is distinguishable from Southern Railway Co. v. Milan, supra, and is more similar to Rosenbush Feed Co. v. Garrison, supra. In Southern Railway Co., the trial court required the defendant, over his objection, to strike from a list which contained only 24 jurors, one of whom was disqualified or incompetent. The defendant had to use one of his strikes to remove the disqualified juror. Since the parties cannot be required to strike from a list that does not contain the names of 24 qualified jurors, this Court would not apply the error without injury rule, although the disqualified juror did not serve on the jury.
In the instant case, since Douglas did not serve on the jury which tried the case, and since the list of jurors contained more than the required 24 competent jurors, and since Wallace was not deprived of a strike which he could have used to remove another juror if Douglas had not been on the list, we are of the opinion that the trial court did not commit reversible error by refusing to strike Douglas for cause.
Based on the foregoing, we are of the opinion that Wallace has failed to show that the error complained of has probably injuriously affected his substantial right to a just, speedy, and inexpensive determination of this cause on its merits. Consequently, we respectfully dissent.