WAL-MART STORES, INC. *v.* Pam BAYSINGER

90-234                                        812 S.W.2d 463

Supreme Court of Arkansas
Opinion delivered July 1, 1991
[Rehearing denied September 16, 1991.*]

---

* Dudley and Corbin, JJ., not participating. Hays and Brown, JJ., and Epley, Sp. J.,
would grant rehearing.

240

*Bassett Law Firm*, by: *Curtis L. Nebben*, for appellant.

*Jim Johnson*, for appellee.

WILLIAM F. SHERMAN, Special Justice. Pam Baysinger, the appellee, filed an action against Wal-Mart, Appellee's former employer, alleging that Wal-Mart terminated her for prosecuting a claim for injuries under the Workers' Compensation Act, in violation of public policy and statute. The complaint also alleged that Wal-Mart was liable for the tort of outrage. The case came to trial before a jury in Benton County Circuit Court on February 15, 1990. The trial court instructed the jury on wrongful discharge, that is, wilful discrimination in the hiring or tenure of work of an individual on account of her claiming workers' compensation benefits. There was no instruction on the allegation of outrage. The jury returned a verdict for Pam Baysinger against Wal-Mart in the sum of $24,000.00 in compensatory damages. The amount or measure of damages is not an issue on appeal.

Ms. Baysinger began working for Wal-Mart at its Warehouse No. 2 in Bentonville, Arkansas on January 14, 1982. She remained there until her termination on October 1, 1986. She received evaluations each year, sometimes two, which were generally very good, and pay increases with each evaluation, except for June, 1986, from $4.95 per hour to her final pay of $6.30 per hour. An evaluation in January, 1984 stated she would work in any area where needed. She was employed in a number of different capacities, including janitor.

On August 28, 1986, Ms. Baysinger sustained a back injury while lifting a box. She suffered an acute lumbosacral strain, which caused back stiffness. She was examined and treated by Dr. Robert E. Holder, after referral by Wal-Mart. On September 2, 1986, Dr. Holder placed Appellee on restrictions to lift no more than ten pounds, then on September 8, 1986, no more than twenty pounds. She received physical therapy and wore a lumbosacral corset. She was allowed to work on September 11 under the lifting restrictions and with modified duty. On September 12, she was sent home. She returned to work on September 17. On September 26, 1986, Appellee suffered a recurrence of the back injury reported on August 28, 1986. The physician found that she had a

recurrent injury with "thoracic spine strain." She returned to work on September 29 and September 30, but was sent home both days because of her September 26 injury. She reported for work on October 1, 1986 and was told to see the personnel manager at Warehouse No. 2, Ernest Mika. Mr. Mika told her she was being terminated because she could not perform her job or any other job in Warehouse No. 2. On the exit interview form, Mr. Mika stated he had been advised by Dr. Holder that continued exposure to this type work could lead to more serious injury for Pam Baysinger. On another form, Mika wrote as the reason for termination that Ms. Baysinger was "unable to perform her job, limited medically," and that Wal-Mart did not expect to rehire Ms. Baysinger. On a notice of separation form it was stated she was not eligible for reemployment.

On the request for medical care form, Dr. Holder had noted the patient should consider another type work because of the recurrent nature of her injuries. He then noted she could return to her regular duties on September 29, 1986. Appellee came to Mika's attention when he saw the comments on the request for medical care form signed by Dr. Holder, which were not specific on her limitations. Mr. Mika's notes show that he discussed the case with a claims supervisor for the workers' compensation service company, who suggested they write Dr. Holder regarding the specific restrictions. Mr. Mika noted: "Depending on Dr. Holder's reply, we should consider placing her — if available in a lighter duty job and if none available termination." Mika directed Ms. Sheila Shepherd to find some work for Appellee at another location. Ms. Shepherd reported back that there was nothing available. On September 27, Mika wrote Dr. Holder requesting more specifics on the restrictions. Dr. Holder replied to Mika by letter dated October 1, received after the termination, observing that Appellee had a history of frequent injuries, "not always related to her low back," that she was a small girl and "obviously not physically built for heavy labor," and that it was difficult to know whether or not recurring injuries were due specifically to true accidents or were somewhat psychologic in nature. The doctor stated he understood that Wal-Mart had gone the "second mile in trying to find her a non-heavy duty source of employment." He observed that her 8th grade education placed "some limits on job options." The doctor recommended that

Appellee "not do any lifting over twenty pounds" and do a "minimal amount of bending, stooping, squatting and pulling type work." He said she could do those things as long as it was not a repetitive job, in other words, "continuous heavy lifting." He did not say how long such restrictions should last. Dr. Holder testified he did not advise Mr. Mika that "continued exposure to that type of work" could lead to more serious injury, that he could not recall that Mika told him he could not find light duty work for Appellee, and that he did not know on October 1 Appellee was being terminated.

On October 3, 1986, Dr. Holder signed an Arkansas Rehabilitation Services General Medical Examination Record in an attempt to obtain assistance from the State for Appellee. The purpose was rehabilitation, to assist her in obtaining training for work not involving common labor. Under "orthopedic," the doctor stated she had "stiff back," could not "touch toes, squat;" she had a cautious gait; and her major disabling condition was chronic low back strain and an 8th grade education.

Mr. Mika testified that if Dr. Holder had given no restrictions, Appellee would still be working at Wal-Mart, as she was a good worker. To Mr. Mika, there was nothing in the documentation to indicate the restrictions were other than permanent and Appellee had permanent limitations for lifting, bending and stooping. He stated this was why a leave of absence did not apply to her.

Pam Baysinger had had no back problems before her employment with Wal-Mart. She had sustained back injuries on October 28, 1982 and June 6, 1983, for which she received medical benefits under workers' compensation. After her August 28, 1986 injury, Wal-Mart paid medical benefits and temporary total disability benefits from August 29, 1986 to September 21, 1986. The last payment of weekly benefits was made after her termination.

Appellant's first argument is that the Benton Circuit Court lacked jurisdiction over the subject matter because the Workers' Compensation Act provides an exclusive remedy for employee claims against employers and that there is no cause of action for wrongful discharge. Appellant cites Ark. Code Ann. § 11-9-105 that the rights and remedies of an employee against his employer

under the Workers' Compensation Act are exclusive. Appellant cites two Arkansas cases. In *Cain* v. *Union National Life Ins. Co.*, 290 Ark. 240, 718 S.W.2d 444 (1986), this Court affirmed the dismissal of a complaint alleging an employee had suffered emotional distress, humiliation, and embarrassment from the respondent's bad faith in not settling a workers' compensation claim. Noting that there were statutory remedies for late payment, the Court held that the Workers' Compensation Act provides the exclusive remedy for such a claim. The Court followed its decision in *Johnson* v. *Houston General Ins. Co.*, 259 Ark. 724, 536 S.W.2d 121 (1976), the second case cited by Appellant, which also involved late payments and alleged purposeful delay in settling a valid claim. The Court stated that the rights and remedies provided in the Workers' Compensation Act were exclusive, and the lower court's dismissal of the complaint was affirmed. In *Johnson*, the employee contended the "retaliatory action on the part of employer-respondent for filing a workman's compensation claim is actionable in a court of law," but the Court declined to address the point. The Court is now prepared to reach this issue.

■ It is the general rule that "when the term of employment in a contract is left to the discretion of either party, or left indefinite, or terminable by either party, either party may put an end to the relationship *at will* and *without cause.*" *Griffin* v. *Erickson*, 277 Ark. 433, 436, 642 S.W.2d 308, 310 (1982). Generally, "employment is held only by mutual consent, and at common law the right of the employer to terminate the employment is *unconditional* and *absolute.*" *Griffin* v. *Erickson, supra*, 227 Ark. at 436.

There are well-defined exceptions to this general rule. Four exceptions to the at-will doctrine under Arkansas law were identified by the United States District Court in *Scholtes* v. *Signal Delivery Service, Inc.*, 548 F.Supp. 487 (W.D. Ark. 1982). The Arkansas Supreme Court recognized the public policy exception to the general rule in *Sterling Drug, Inc.* v. *Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988), which involved the dismissal of Oxford, the employee, by Sterling Drug, Inc. Sterling Drug supervisors believed that Oxford had reported Sterling to the GSA for pricing violations, resulting in fines against Sterling in the sum of $1,075,000 in a 1984 settlement.

Oxford sued Sterling Drug for wrongful discharge and outrage. The Court cited its decision in *M.B.M. Co., Inc.* v. *Counce*, 268 Ark. 269, 273, 596 S.W.2d 681 (1980), in which the Court recognized certain exceptions to the at-will doctrine, including discharge for exercising a statutory right, for performing a duty required by law, or "that the reason for the discharge was in violation of another well established public policy." In *Sterling*, this court noted the development of a case law in other states accepting the public policy exception to the employment at-will doctrine. A public policy exception has been found in cases where employees were discharged for filing workers' compensation claims. *See, e.g.*, *Kelsay* v. *Motorola, Inc.*, 74 Ill.2d 172, 384 N.E.2d 353 (1978); and *Frampton* v. *Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973).

In *Sterling Drug, Inc.* v. *Oxford, supra*, 294 Ark. at 249, this Court considered whether the public policy exception to the employment at-will doctrine should be founded upon contract or tort. The Court found a cause of action in contract to be more appropriate in such cases. There is an implied understanding that an employer will not wrongfully discharge an employee. The Court adopted the contract theory of liability, observing that "if an employer's conduct in breaking a contract of employment is sufficiently egregious or extreme, the employee can still claim tort damages on a cause of action for outrage." *Sterling Drug, Inc., supra*, 294 Ark. at 249.

The public policy of a state is found in its constitution and statutes. *Sterling Drug, Inc., supra*, 294 Ark. at 249. The Workers' Compensation Act provides a criminal penalty for "any employer who willfully discriminates in regard to the hiring or tenure of work or any term or condition of work of any individual on account of his claiming benefits" or "who in any manner obstructs or impedes the filing of claims for benefits." Ark. Code Ann. § 11-9-107 (1987). It is the clear purpose of workers' compensation laws to compensate workers who are injured on the job, and, in return for that guarantee, to give employers general assurance that claims made under the law will provide injured workers with an exclusive remedy. It is the policy of this State that valid claims will be paid. An employer violates this public policy when he discharges an employee for claiming workers' compensation benefits under the Act.

■ Wal-Mart argues that Baysinger has no cause of action because the Arkansas General Assembly has not adopted a statute providing a civil cause of action for injured employees. Appellant's argument has no merit, for the public policy exception comprehends conduct by the employer which contravenes the statute, Ark. Code Ann. § 11-9-107, and the stated objectives of the Workers' Compensation Act. Conviction pursuant to a criminal statute requires the State to satisfy its burden of proof beyond a reasonable doubt. That is not the standard of proof required in a case alleging wrongful discharge. The criminal statute is a clear statement of a policy against discharging employees for pursuing workers' compensation benefits. The plaintiff, Pam Baysinger, had the ultimate burden to prove with a preponderance of the evidence that she was discharged in violation of a well-established public policy of this State, more specifically, that policy set forth in Ark. Code Ann. § 11-9-107 (1987).

■ The burden of proof to establish a prima facie case of wrongful discharge is upon the employee. See Larson, *The Law of Workmen's Compensation*, Vol. 2A, § 68.36(c) (1990). A prima facie case is made by substantial evidence that the workers' compensation claim was a cause of the discharge. When an employee has made a prima facie case of retaliation, or wrongful discharge, the burden shifts to the employer to prove that there was a legitimate, non-retaliatory reason for the discharge. See Larson, *The Law of Workmen's Compensation*, Vol. 2A § 68.36(d) (1990). Such a reason might be the one offered by Wal-Mart in the present case, that Appellee did not have the physical ability to do her job, or any other job which might have been provided at that point in time. The court did not instruct the jury on the employer's burden to prove a legitimate reason for the discharge, and no such instruction was requested by either party. The evidence offered to support Appellant's reason for terminating Appellee was not convincing.

■ There was substantial evidence to support the jury verdict for wrongful discharge. The verdict may be supported by direct or circumstantial evidence. As it is quite unlikely that an employer would announce that the employee was being discharged because of a workers' compensation claim, the injured employee must normally rely upon circumstantial evidence.

There is sufficient evidence in the record that Wal-Mart discharged Pam Baysinger because of the workers' compensation claim. After her August 28, 1986 injury, she received workers' compensation benefits. There was a recurrence of her injury on September 26. The personnel supervisor stated on the exit interview form he was told by the physician that continued exposure to this type of work could lead to more serious injury for the claimant, but the physician testified he had no recollection of saying such a thing. Otherwise, why would the physician release the claimant to return to work on September 29? There was too much unknown in Pam Baysinger's condition for the employer to conclude that she could no longer perform her work. A warehouse operations manager testified there were several types of light duty jobs which required little or no lifting, but Ms. Baysinger was not given an opportunity to fill one of them because she lacked the mathematical skills. She also was not given an opportunity to request medical leave in accordance with the Wal-Mart Associates' Handbook. The employer terminated Appellee, hurriedly, without adequate information of her medical condition or of the likelihood that she would heal.

Wal-Mart contends that no cause of action exists for retaliatory discharge until the employee files a claim with the Workers' Compensation Commission. The Court rejects this argument, which if allowed would permit the employer to discharge an injured employee before the employee would have had an opportunity to file a claim. Under the Arkansas Workers' Compensation Act, an injured employee may receive full benefits without ever filing an A-7 Form with the Workers' Compensation Commission. The record indicates that an A-7 Form was filed on November 19, 1986. There is a division in other jurisdictions which have addressed this issue, but we find the better rule to be that it is not required for the injured employee to file a formal claim to create the cause of action. It is sufficient that workers' compensation benefits are anticipated from the injury, whether or not a claim has been or will be filed. *See Wright* v. *Fiber Industries, Inc.*, 60 N.C.App. 486, 299 S.E.2d 284 (1983).

Appellant also argues that it is not responsible because a separate company, Corporate Service (CSI), actually processes workers' compensation claims on behalf of Wal-Mart. The record shows that injured workers are paid through funds from Wal-

Mart. The Wal-Mart personnel supervisor discussed Appellee's claims with a CSI representative on the day of her last injury. Wal-Mart is not insulated from liability through its employment of a separate service corporation to handle its workers' compensation claims.

Appellant presents two additional arguments, both alleging errors in the jury selection. Appellant contends first that the court erred in disqualifying any prospective juror who owned Wal-Mart stock, regardless of amount. Twenty-two prospective jurors who owned Wal-Mart stock were excused for cause. There is scant authority on this issue, but the few cases hold it is reversible error for a trial court to refuse to strike a juror who owns securities in a corporation which is party to the litigation. *See Chestnut* v. *Ford Motor Company*, 445 F.2d 967 (4th Cir. 1971); *Wallace* v. *Alabama Power Company*, 497 So.2d 450, 453-54 (Ala. 1986); *Southern Bell Telephone & Telegraph Company* v. *Shepard*, 204 S.E.2d 11, 12 (S.C. 1974).

The issue of a juror's qualifications lies within the sound discretion of the trial court. *Montgomery* v. *State*, 277 Ark. 95, 97, 640 S.W.2d 108 (1982). The appellant, Wal-Mart Stores, Inc., occupies a predominant economic position in the Bentonville, Arkansas area. It was not an abuse of discretion for the trial court to excuse for cause all jurors who owned stock of the defendant corporation.

The appellant contends further that the lower court committed error in failing to strike a prospective juror who was a retired labor union official. Appellant's counsel asked him if he would be "rooting for Mrs. Baysinger." The prospective juror replied, "I fought for people like that." Appellant's counsel asked the prospective juror "do you feel that because of that you could give one hundred percent partiality to this case today?" The prospective juror replied, "I think so." Appellant's counsel asked that he be excused. The Court, inquiring as to the veniremen's qualifications, asked whether he could set aside any past experiences, could decide the case on the evidence presented, and could be fair to both parties; and the prospective juror responded affirmatively. It is apparent that the prospective juror did not understand the question concerning his "partiality," thinking the question asked for his "impartiality."

Nothing further was said by the Court or by counsel concerning the prospective juror's impartiality or his qualifications. He was called as a juror, and Appellant used a peremptory challenge to strike him. Three other veniremen identified themselves as former labor union members, and no objection was made. Appellant bears the burden of proving a prospective juror's disqualification. *Montgomery* v. *State, supra,* 277 Ark. at 97. There was no abuse of discretion by the trial judge in failing to strike the juror for cause.

Affirmed.

DUDLEY and CORBIN, JJ., not participating.

HAYS and BROWN, JJ., and Special Justice ALAN EPLEY dissent.

STEELE HAYS, Justice, dissenting. I have no quarrel with the view that the public policy of this state proscribes retaliatory discharge by an employer because an employee files a workers' compensation claim. Indeed, that policy is expressly embraced in the act: Ark. Code Ann. § 11-9-107 (1987) provides that an employer who willfully discriminates against any employee for claiming benefits is subject to fine and imprisonment. However, since the remedies provided by the legislature for the breach of that policy do not include a cause of action for damages, it is, for reasons I will attempt to demonstrate, beyond the power of this court to fashion that remedy on its own.

My disagreement with the majority is that I believe the judicial branch has no power to broaden the scope of the Workers' Compensation Act, nor any power to create a remedy not provided in the act. That power belongs to the legislature alone under the express provisions of Amendment No. 26. Given the unique status of the workers' compensation law in Arkansas, our function, I believe, is decidedly narrow, consisting only of such interpretative role as necessarily attends appellate review. In fact, this court has pointedly observed that its authority is so restricted in workers' compensation cases that if the legislature had not provided for court review, *then the courts could not have considered workers' compensation cases at all. J. L. Williams & Sons, Inc.* v. *Smith,* 205 Ark. 604, 170 S.W.2d 82 (1943).

The Workers' Compensation Act was passed under the

authority of Amendment No. 26 to the state constitution, which was initiated by the people and adopted by them in 1938. By the amendment the people directed that the *General Assembly* shall have power to provide "the *means, methods,* and *forum* for adjudicating" workers' compensation claims (my emphasis). The legislature sent three bills to the governor. Two were vetoed. One was signed and then abated by referendum petitions until finally approved by the people in 1940. Thus, the people have been keenly involved in the adoption, drafting and approval of the legislation produced by the *General Assembly* at their direction.

The act itself is comprehensive and thorough and we have declared it "plain and unambiguous." *Odom* v. *Ark. Pipe & Scrap Material Co.,* 208 Ark. 678, 187 S.W.2d 320 (1945). It provides in minute detail for every eventuality arising from the employment relationship. For example, if the employer fails to secure payment of benefits, the employee has the option between the benefits due under the act or asserting a cause of action for damages at common law without the crippling defenses which were available to an employer at common law. Ark. Code Ann. § 11-9-105(b)(1) (1987). That same section, § 11-9-105, provides that the rights and remedies "shall be exclusive of all other rights and remedies of the employee" or anyone claiming under them.

Over the half century that the Workers' Compensation Act has existed in Arkansas, this court has withstood a battery of legal challenges to the act, including ingenious attempts to enlarge its scope, citing again and again § 11-9-105 and declaring that rights and remedies granted to an employee "shall be exclusive of all other rights and remedies." The act is a finely tuned trade-off of common law liabilities and defenses between industry and labor by which each class gave up certain rights in return for certain benefits. *Young* v. *G.L. Tarlton, Contractor, Inc.,* 204 Ark. 283, 162 S.W.2d 477 (1942) summarized the end result:

> The act here in question takes away the cause of action on the one hand and the ground of defense on the other and merges both in a statutory indemnity fixed and certain. If the power to do away with a cause of action in any case exists at all in the exercise of the police power of the state, then the right of trial by jury is therefore no longer involved

in such cases. The right of jury trial being incidental to the right of action, to destroy the latter is to leave the former nothing upon which to operate.

By analogy, divorce in Arkansas is purely statutory, and just as this court has no power to create a ground for divorce not expressly provided by the legislature, it has no power to enlarge, or lessen, the scope of the Workers' Compensation Act. In that vein, we said in *Barth* v. *Liberty Mutual Ins. Co.*, 212 Ark. 942, 208 S.W.2d 455 (1948):

> The cause of action of one claiming under the Workmen's Compensation Act is *purely statutory*, and that one claiming under its provisions 'has no claim or cause of action except the one given him' by the act.

In the *Odom* case, *supra*, speaking of the Workers' Compensation Act, we wrote:

> Its purpose and effect was to substitute, as to employment embraced within its terms, the liability created by it for *any and all* liability of the master arising from the death or injury of his servant. The remedies provided by [the workers' compensation law], are, unless the employer fails to secure the payment of compensation as required by the act, exclusive. [My emphasis.]

In *Huffstettler* v. *Lion Oil Co.*, 110 F. Supp. 222 (W.D. Ark. 1953), Judge Miller, in examining the exclusivity of Arkansas workers' compensation law, recognized the power of the *legislature* to create new causes of action under Amendment 26 and that the only cause of action by an employee against an employer now existing is where the employer fails to afford the benefits provided under the act.

In *Seawright* v. *U.S.F. & G. Co.*, 275 Ark. 96, 627 S.W.2d 557 (1982), referring to Ark. Code Ann. § 11-9-105, we said:

> The rights and remedies herein granted to an employee . . . on account of injury or death, shall be exclusive of all other rights and remedies of such employee, his legal representative, dependents, or next of kin, or any one otherwise entitled to recover damages from such employer. . . .

And in *Brothers* v. *Dierks Lumber & Coal Co.*, 217 Ark. 632, 232 S.W.2d 646 (1950), Justice Robert A. Lefler, in upholding the constitutionality of the act, referred to the right of the *legislature* to create new causes of action where none before existed.

A great many more cases could be cited. Suffice it to say that as recently as 1986, this court stated with firmness and unanimity that "any change concerning the exclusivity of the statutory remedies must come *legislatively*." [My emphasis.] *Cain* v. *National Union Life Ins. Co.*, 290 Ark. 240, 718 S.W.2d 44 (1986).

In sum, three provisions of the Workers' Compensation Act make it crystal clear that the legislature acted with purpose in *not* fashioning a cause of action at common law for retaliatory discharge by employers: one section provides that remedies *shall* be exclusive of all other remedies [§ 11-9-105(a)], one section provides that an employee *does* have a cause of action for damages at common law where the employer fails to secure benefits under the act [§ 11-9-105(b)(1)] and yet another section provides penalties for the employer who willfully discriminates against an employee for filing a claim for benefits. [§ 11-9-107]. Hence, the legislature recognized the likelihood of retaliatory actions by employers and provided the measures to penalize such actions. Those remedies do not include the action now before us and it is not within our power to create it.

The comments of Justice Robert C. Underwood of Illinois[1] in reference to judicial self-restraint are especially apt:

> It is only stating the obvious to say that it is fundamental in our system of government that the law-making function is vested in the legislative branch. The majority's intrusion into the legislative field in this case typifies the lack of judicial self-restraint which has been a source of concern and comment throughout our history. Mr. Chief Justice Marshall spoke to it as follows: "[The judicial] department has no will in any case.
> * * * Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose

---

[1] *Kelsay* v. *Motorola, Inc.*, 74 Ill. 2d 172 384 N.E.2d 353 (Ill. 1978).

of giving effect to the will of the legislature; or in other words, to the will of the law." (*Osborn* v. *Bank of United States* (1824), 22 U.S. (9 Wheat.) 738, 866, 6 L.Ed. 204, 234.) It is essential to a preservation of the separation of powers that those of us who serve in the judicial branch subordinate our desires and preferences to the actions of the legislative and executive branches as long as those are expressed in constitutional terms.

Mr. Justice Harlan, dissenting in *Wesberry* v. *Sanders* (1964), 376 U.S. 1, 48, 84 S.Ct. 526, 551, 11 L.Ed. 481, 509, phrased it thus:

> The Constitution does not confer on the Court blanket authority to step into every situation where the political branch may be thought to have fallen short. The stability of this institution ultimately depends not only upon its being alert to keep the other branches of government within constitutional bounds but equally upon recognition of the limitations on the Court's own functions in the constitutional system.

I would reverse and dismiss.

Special Justice Alan D. Epley joins in this dissent.

ROBERT L. BROWN, Justice, dissenting. Though I recognize an exception to the at-will doctrine for firings caused by filing a worker's compensation claim, the exception should not govern the facts of this case where a claim had not been filed at the time Pam Baysinger was fired. Baysinger was terminated because, regrettably, she could no longer do the work due to a back injury. The result was harsh and arguably unfair, but that was the reason for her firing. The majority engages in complete speculation when it holds that her firing was tied to an "anticipated" worker's compensation claim.

As in the case of *Mapco, Inc.* v. *Payne*, 306 Ark. 198, 812 S.W.2d 483 (1991), there was no substantial evidence, circumstantial or otherwise, of motive or intent by Wal-Mart to violate the public policy of this state as set out in Ark. Code Ann. § 11-9-107 (1987). By this decision and *Mapco*, however, this court, as a practical matter, has embraced a theory of strict liability when it

comes to worker's compensation claims and employee terminations, regardless of the extenuating circumstances. To uphold the public policy of this state is one thing. To find a violation of that public policy simply premised on the juxtaposition of two events — the filing of the claim and termination — goes too far. Some evidence of intent or motive to violate the state's public policy must be shown.

But the facts in this case also differ in a major respect from those in *Mapco*. Here, Baysinger's firing *preceded* the filing of her claim. After she was terminated, Wal-Mart could in no way obstruct or impede her claim under Ark. Code Ann. § 11-9-107. She was completely free to pursue her claim or not. To hold that somehow the firing did obstruct her claim does not logically follow.

The majority cites as sole authority for its conclusion a North Carolina case that a firing before a claim was filed amounted to retaliation by the employer. *See Wright* v. *Fiber Industries, Inc.*, 299 S.E.2d 284 (N.C. App. 1983). Though I disagree with that holding for reasons already stated, I further note that the North Carolina statute setting out the state's public policy is decidedly different from our own. The North Carolina statute creates a civil remedy and specifically prevents discharges and demotions because an employee has instituted or caused to be instituted a claim. N.C. Gen. Stat. Sec. 97-6.1 (1985). Our statute, on the other hand, is a criminal statute and speaks only of obstructing and impeding the filing of claims.

To hold that Baysinger's firing was in retaliation for some future claim she might file constitutes a conjectural leap I cannot make. The public policy exception is not appropriate for the facts of this case.

I respectfully dissent.

HAYS, J., joins.

ALAN D. EPLEY, Special Justice, dissenting. I join in Justice Hays' dissent. It occurs to me that since the public policy of the state is set forth in its constitution and statutes, the appellee, Mrs. Baysinger, is also bound by the public policy set forth in Arkansas Code Annotated § 11-9-107 (1987). That public policy is (as Justice Hays states) that it is the policy of this state that all

actions for damages on account of injury between employer and employee are the exclusive province of worker's compensation, except where the employer fails to secure the payment of compensation. The majority opinion does not address this conflict in the public policy of the state.

However, I further dissent from the majority opinion finding substantial evidence to support the verdict of the jury.

It has been said that hard cases make bad law. I think this is a hard case. The majority opinion attempts to find evidence that the public policy of the State has been violated when an employer states on an exit interview form that he was told by the physician that continued exposure to this type of work could lead to more serious injury for the claimant. The physician (according to the majority) testified that he had no recollection of saying such a thing. Earlier in the opinion the majority interprets the testimony of Dr. Holder to be that he flatly did not advise Mr. Mika that continued exposure to this type of work could lead to more serious injury. Either way, how this fact has any logical bearing on this case has not been demonstrated by the majority. The only connection the appellee has been able to establish factually, in my opinion, is the contact between Mr. Mika and Mr. Scissors, the CSI representative. But a review of the testimony of both Mr. Mika and Mr. Scissors does not reveal any facts supporting the contention that the appellee's firing was in retaliation for filing a worker's compensation claim. The suggestion of Mr. Scissors was that if the employer could not find lighter work for the employee to do, then her employment should be terminated. The employer adopted this advice. But this does not provide evidence to substantially support the jury verdict. The evidence in this case and certainly the subsequent testimony of Doctor Holder indicates that it would be reasonable for anyone to conclude that if Mrs. Baysinger continued in her work of heavy lifting, that she would risk suffering a permanent and possibly debilitating injury. The evidence in this case which I feel is substantial is that the employer discharged Mrs. Baysinger before she suffered permanent injury. Even though she received worker's compensation payments, there is no substantial evidence that she was fired because of that fact. There is no public policy in this state that requires an employer to keep an employee whom the employer recognizes has become physically unsuited for a job. The distinc-

tion attempted here is that in a case such as this, the evidence of the plaintiff must prove that the discharge was in retaliation for a worker's compensation claim, and not to keep the employee from suffering further injury attempting to do the work. The majority suggests that the employer acted too quickly and without sufficient medical information about the appellee's condition and apparently cites these opinions as facts supporting the jury's verdict. There is nothing in the record, either expert testimonies or otherwise, that indicates that the speed with which the decision to terminate was made is substantial evidence supporting the jury's decision. In fact, the record reflects that the decision was not made until after a search for another job was made by the employer and after telephonic consultation by the employer with the treating physician. The record is clear that the physician advised that the appellee was no longer physically able to accomplish her former work. There is no substantial evidence in this record that Mrs. Baysinger's firing was related to her claiming worker's compensation benefits.

The evidence required of the employee in such a case as this must show, in the language of Arkansas Code Annotated § 11-9-107 (1987), that the employer has "willfully discriminate(d)" in regard to the tenure of work of the employee. It is my opinion that the record only demonstrates slight evidence of willful discrimination on the part of the employer against the employee and no evidence at all that the discharge was because of the past filing of worker's compensation claims. Therefore, in my opinion, the case should be reversed.

I agree with that portion of the majority opinion addressing the issues regarding jury selection raised by the appellant.