659 So.2d 35 (1995)
CSX TRANSPORTATION, INC.
v.
George E. DANSBY.
1921512.
Supreme Court of Alabama.
February 24, 1995.
Rehearing Denied April 7, 1995.
*37 James F. Walsh and E. Berton Spence of Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.
John A. Taber of Taber & Dansby, Maston E. Martin, Jr. of Fazekas & Martin, Montgomery, for appellee.

ON APPLICATION FOR REHEARING
PER CURIAM.
This Court's order of affirmance entered on August 19, 1994, without opinion, is withdrawn, and the following is substituted therefor.
George E. Dansby, a retired employee of CSX Transportation, Inc. ("CSX"), sued CSX for damages under the Federal Employer's Liability Act ("FELA"), alleging negligence.[1] Dansby alleged that he had sustained a hearing loss due to exposure to air horns and locomotive noise during his employment as a locomotive engineer with CSX. The jury returned a verdict in favor of Dansby for $105,000 in compensatory damages. The trial court denied CSX's motion for a judgment notwithstanding the verdict or for a new trial and entered a judgment on the verdict. CSX appeals.
A jury's verdict is presumed correct and will not be disturbed unless it is plainly erroneous or manifestly unjust. Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala.1988). A judgment based upon a jury verdict and sustained by the denial of a motion for a new trial will not be reversed unless it is plainly and palpably wrong. Ashbee v. Brock, 510 So.2d 214 (Ala.1987). Because the jury returned a verdict for Dansby, any disputed questions of fact must be resolved in his favor, and we must presume that the jury drew from the facts any reasonable inferences necessary to support its verdict. State Farm Auto. Ins. Co. v. Morris, 612 So.2d 440, 443 (Ala.1993). In short, in reviewing a judgment based upon a jury verdict, this Court must review the record in a light most favorable to the appellee. Continental Cas. Ins. Co. v. McDonald, 567 So.2d 1208, 1211 (Ala.1990).
Congress enacted the FELA in 1906 to establish "a tort remedy for railroad workers injured on the job." Lancaster v. Norfolk & Western Ry., 773 F.2d 807, 812 (7th Cir.1985), cert. denied, 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987). It was enacted in response to the special needs of railroad workers, Sinkler v. Missouri Pacific R.R., 356 U.S. 326, 329, 78 S.Ct. 758, 761-62, 2 L.Ed.2d 799 (1958), and it is construed liberally for their protection. To prevail on an FELA negligence claim, the plaintiff must prove the traditional common law elements of negligence: duty, breach of that duty, foreseeability, and causation. Adams v. CSX Transportation, Inc., 899 F.2d 536 (6th Cir. 1990). Pursuant to the FELA, a railroad company has the duty to provide its employees with a reasonably safe work environment; it must use reasonable care in fulfilling this duty. Shenker v. Baltimore & Ohio R.R., 374 U.S. 1, 7, 83 S.Ct. 1667, 1671-72, 10 L.Ed.2d 709 (1963); Carlew v. Burlington Northern R.R., 514 So.2d 899, 901 (Ala.1987). *38 When a railroad company learns of unsafe conditions, it must take reasonable steps to protect its employees; otherwise, it will be held liable for injuries resulting from the unsafe conditions. Gallose v. Long Island R.R., 878 F.2d 80 (2d Cir.1989).
Viewed in a light most favorable to Dansby, Continental Cas. Ins., supra, the record suggests the following facts:
Dansby began working with Louisville & Nashville Railroad ("L & N"), which later merged into CSX, in 1944. He worked as a railroad fireman and later as an engineer. Dansby usually operated trains on runs between Montgomery and Mobile and would sometimes conduct runs from Montgomery to Pensacola, Florida.
In the 1950s, the Federal Government began to require that trains be equipped with air horns intended to prevent railroad crossing accidents. Federal regulations require that the air horns be capable of producing 96 decibels at 100 feet. The horns were mounted near the cabs of the trains. L & N regulations required that Dansby sound the horn at intervals of 20 to 25 seconds at each railroad crossing. Dansby's usual route included 109 railroad crossings at which he was required to sound the horn. CSX provided no warnings or safety devices concerning ear protection until 1987, almost a year after Dansby's retirement in December 1986.
In early 1989, Dansby's wife became severely ill, and for approximately three months Dansby assisted her while she was bedridden. During this time, Dansby stated, he noticed that he had sustained a hearing loss. Dansby said:
"I had to wait on her hand and foot for a number of months ... [and] she was unable to do anything. That's when I realized that I wasn't hearing things like `Honey, come here.' I wasn't hearing things and I had to walk in and ask her what she said."
He further testified as to how his hearing loss had affected him:
"[M]aybe [my wife and I] go out to eat once in a while any background noise [sic] and I see somebody I knew I would say we know that guy. `Who is that?' I say, `What did you say?' And about half the time she would say, `Forget it. Ain't worth it.' You know that don'tthat's bad. I mean it leaves both of us feeling not the way we should feel toward each other.
". . . .
"... The only way I can go turkey hunting is [to] get one of [my grandchildren] to go with me and tell me which way he gobbled from.... I don't drive into town anymore. I do go to get a haircut and drive my pick-up there. I have got big mirrors where I can see out of the back.... [Y]ou can't hear a car beside you.... You see them morning birds over there, you know, it's singing and you can't hear the blooming things. I guess what I'm trying to say is when you can't hear I'm not a whole man anymore and I resent that."
In June 1989 Dansby attended a railroad workers' convention, where he learned that other workers had suffered hearing loss while employed by CSX. Dansby filed this action against CSX on January 31, 1991.
Part of Dansby's evidence was testimony from Curtis Smith, Ph.D., an audiologist. After comparing Federal workplace noise guidelines and relating them to his evaluation of Dansby's working conditions, Dr. Smith testified that Dansby had been overexposed to noise on every shift he had worked for approximately 37 years. Dr. Smith also concluded that Dansby's exposure to the noise of train air horns was sufficient to cause his hearing loss. Dansby also attempted to show that CSX knew of the hearing damage its workers were sustaining from locomotive noise; he produced a 1981 letter from a CSX vice president wherein it was stated:
"Mr. Mark Badders, Industrial Hygienist, recently rode over the SCL and L & N properties and reported the noise levels extremely high on all locomotives. You will recall Dr. Mead has recommended ear protection be provided to our engine service employees, which in freight service would include the brakemen."
*39 As noted above, CSX did not require hearing protection for its employees until 1987, after Dansby's retirement.
CSX produced testimony from Dr. Robert Baldwin, an otologist. Dr. Baldwin concluded that Dansby had suffered "zero percent" hearing loss according to a test recommended by the American Academy of Otolaryngology Head and Neck Surgery, although he also stated that Dansby did have a "significant hearing loss." Dr. Baldwin further concluded that it was not possible that Dansby had suffered the hearing loss because of railroad noise, if he had noticed it after his retirement from CSX. Dr. Baldwin attributed Dansby's hearing loss to hunting with shotguns and to aging. CSX also questioned Dansby concerning a notation in his medical records indicating that he had noticed the hearing loss in 1987, not 1989. Dansby reiterated that he noticed the loss in 1989 while helping his wife during her illness. As noted above, the jury found in favor of Dansby and assessed damages against CSX in the amount of $105,000.
We hold that the evidence was sufficient to support the jury's verdict. The trial court was presented with conflicting evidence as to whether Dansby had suffered hearing loss, the cause of that alleged hearing loss, and the time at which Dansby discovered the alleged hearing loss. Therefore, the trial court properly submitted the case to the jury. Unlike the plaintiffs in Hall v. CSX, 631 So.2d 1013 (Ala.1994), another FELA case involving hearing loss, Dansby presented sufficient evidence both of a hearing loss and proximate work-related causation of that hearing loss to create a genuine issue of material fact for submission to the jury. The jury could have reasonably inferred from the evidence that Dansby had sustained a hearing loss as a result of his years of exposure to the CSX train horns and that CSX had negligently failed to provide ear protection or warnings to its workers to avoid the noise exposure. The jury also could have reasonably inferred that Dansby had noticed his hearing loss in 1989; in that case, his FELA cause of action would have accrued in 1989. The action, then, would have been filed within the three-year period provided by the statute of limitations. See Chatham v. CSX Transp., Inc., 613 So.2d 341 (Ala.1993). Having concluded that the jury's verdict was not clearly wrong or unjust, given the evidence presented, we will now review CSX's assertions of error.
CSX first asserts that the trial court erred in refusing to remove for cause a certain prospective juror who was employed by CSX. CSX eventually removed the prospective juror by exercising one of its peremptory strikes.
In addition to the statutory challenges for cause specified by Ala.Code 1975, § 12-16-150, this Court also recognizes the common law challenges for cause. Wallace v. Alabama Power Co., 497 So.2d 450 (Ala.1986). A common law challenge for cause must entail "`some matter which imports absolute bias or favor, and leaves nothing for the discretion of the court.'" Wallace, supra, quoting Brown v. Woolverton, 219 Ala. 112, 115, 121 So. 404, 406 (1928). At common law, an employee of a party was subject to challenge for cause. Kendrick v. Birmingham S. Ry., 254 Ala. 313, 48 So.2d 320 (1950); Citizens' Light, Heat & Power Co. v. Lee, 182 Ala. 561, 62 So. 199 (1913).
However, we hold that the better view is that if the employer makes the challenge, it must make a showing of prejudice or bias on the part of its employee, when it challenges for cause the employee's qualifications for serving as a juror in its case. If the employer can justify its motion by proving that the employee will be prejudiced in some manner as a trier of fact, then the trial court should strike that prospective juror for cause. Without such proof, the trial court should not strike the employee for cause. The party opposing the employer of the prospective juror, however, should be allowed a challenge for cause against the prospective juror, under the rule stated in Kendrick, supra, without a showing of bias or prejudice.
Our two-pronged approach to this issue is based upon a recognition of the unique relationship between an employer and its employee. Undoubtedly, this relationship implies a partiality on the part of that employee in favor of the employer. We must *40 presume that the employer and the employee have a friendly working relationship. If such a relationship does not exist, then the employer, to have a challenge for cause, must show the court what the true relationship is. Conversely, the party opposing the employer should not be required to show prejudice in order to challenge the employee; when that party challenges the employee, a prejudice in favor of the employer must be presumed to exist, and the trial court is consequently left without discretion in ruling on the challenge for cause. As for the employer, there is no reason that it cannot carefully question its employee during voir dire so that the trial court may determine, within its discretion, whether the employee has such prejudice as will support the employer's challenge for cause.
For these reasons, we must reject CSX's contentions on this issue. Although the juror in question was currently employed by CSX, none of his voir dire responses demonstrated that he would be biased in favor of, or against, CSX. Therefore, the trial court did not err in denying CSX's challenge for cause.
CSX next argues that Dansby produced no medical evidence to indicate that his hearing loss was caused by exposure to work-related noise. CSX also argues that Dansby submitted no evidence that his workplace was unsafe and that he failed to prove hearing loss.
The trial court has wide discretion in determining who may be qualified to testify as an expert witness, and its decision on that question will not be reversed unless it abused that discretion. Baker v. Merry-Go-Round Roller Rink, Inc., 537 So.2d 1 (Ala. 1988); Dyer v. Traeger, 357 So.2d 328 (Ala. 1978); W.S. v. T.W., 585 So.2d 26 (Ala.1991). The trial court did not abuse its discretion in allowing Dr. Smith to testify as to the cause of Dansby's hearing loss. This case is different from Hall v. CSX, supra, because in studying Dansby's hearing loss Dr. Smith compiled a comprehensive history of Dansby's noise exposure during his years of work. Dr. Smith examined various reports and tests from audiologists and medical doctors concerning Dansby's hearing, and he conducted an audiogram on Dansby. Dr. Smith concluded, based upon his study of Dansby's hearing and Dansby's working conditions at CSX, that Dansby had suffered a hearing loss that was attributable to his work environment. Dr. Smith's calculations of Dansby's exposure to the train horns, combined with his thorough study of Dansby's hearing, was sufficient to establish a factual basis for his conclusion that Dansby's hearing loss was caused by his exposure to noise while he was working at CSX. See CSX Transp., Inc. v. Bryant, 589 So.2d 706 (Ala.1991) (affirming judgment where the trial court admitted testimony from Dr. Smith as to the causation of a railroad employee's workplace-related hearing loss).
Although CSX produced contrary testimony concerning Dansby's hearing loss, this conflicting evidence clearly presented genuine issues of material fact to be resolved by the jury. We further note that Dr. Smith's testimony as to the noise levels to which Dansby was exposed at his workplace was sufficient proof of an unsafe workplace to also create a jury question. Accordingly, CSX's arguments on this issue are without merit.
CSX next argues that the trial court erred in refusing to give a particular instruction to the jury; that instruction would have limited the purpose for which the jury could consider evidence of noise levels noted on a previous L & N train run. The evidence consisted of a noise level study that had been conducted on an L & N train run in 1981.
The trial court expressly admitted the evidence for the purpose of showing that Dr. Smith's estimations of the noise levels in Dansby's train runs were consistent with the noise levels measured in the previous L & N train study. Dr. Smith testified that his findings were consistent with the conclusions of the L & N study. We hold that the trial court did not err in refusing CSX's proposed instruction.
CSX next contends that the trial court erred in failing to submit its requested special interrogatories to the jury. Those interrogatories would have required the jury to make a specific finding as to whether *41 Dansby discovered his hearing loss within the time specified by the statute of limitations.
Rule 49(a), Ala.R.Civ.P., provides that the jury's determination should be by a general verdict "in simple cases where the general verdict will serve the ends of justice." This Court has approved the use of special interrogatories in complicated cases such as "crashworthiness" cases tried pursuant to the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). See General Motors Corp. v. Edwards, 482 So.2d 1176 (Ala. 1985). However, in this relatively uncomplicated case, we cannot hold that the trial court abused its discretion in not submitting the interrogatories to the jury.
Last, CSX contends that the trial court erred in denying its Rule 60(b)(6), Ala.R.Civ. P., motion, which sought relief from the judgment because of statements made by certain jurors in affidavits obtained after the trial.
Generally, affidavits are inadmissible to impeach a jury's verdict. Wiberg v. Sadoughian, 514 So.2d 940 (Ala.1987). An affidavit showing that extraneous facts influenced the jury's deliberations is admissible; however, affidavits concerning "the debates and discussions of the case by the jury while deliberating thereon" do not fall within this exception. Alabama Power Co. v. Turner, 575 So.2d 551, 557 (Ala.1991). We have thoroughly reviewed the affidavits obtained from the jurors in this case. We conclude that these affidavits concern the "debates and discussions" involved in the jury's deliberations, and are therefore not admissible to impeach the jury's verdict. Alabama Power Co., supra. Therefore, the trial court did not err in denying CSX's Rule 60(b)(6) motion.
For the foregoing reasons, the judgment of the trial court is affirmed.
APPLICATION GRANTED; ORDER OF AFFIRMANCE WITHDRAWN; JUDGMENT AFFIRMED.
ALMON, SHORES, HOUSTON and INGRAM, JJ., concur.
MADDOX, J., concurs specially in part and concurs in the result in part.
MADDOX, Justice (concurring specially in part and concurring in the result in part).
"The rule concerning challenge of a juror for cause was stated by this court in Brown v. Woolverton, 219 Ala. 112, 115, 121 So. 404, 406, 64 A.L.R. 640:
"`* * * To justify a challenge for principal cause there must be a statutory ground, or some matter which imports absolute bias or favor, and leaves nothing for the discretion of the court. 16 R.C.L. 255. "Competency under a statute (or for principal cause at common law) is a question of law, but in other cases is a question of fact, or a mixed question of law and fact, to be determined by the trial court in the exercise of a sound discretion, and its decision will not be interfered with, unless clearly shown to have been abused." 35 C.J. 312.'
"In Alabama the statutory grounds of challenge for cause are as set forth in [§ 12-16-150, Ala.Code 1975] and as exist at common law. Mitchell v. Vann, 278 Ala. 1, 174 So.2d 501; Mullis v. State, 258 Ala. 309, 62 So.2d 451. The relationships here in question do not fall within the statutory provisions. It follows, therefore, in accordance with the rule as expressed in Brown v. Woolverton, supra, that it was necessary for appellants to show some matter which imported absolute bias or favor as to the challenged jurors so as to leave no room for the exercise of the trial court's discretion. To quote further from the Woolverton decision:
"`A challenge for favor or bias is to be determined by the trial court as any other question of fact, tried without a jury, and is reviewable on like principles.... The decision of the trial court on such question founded on oral evidence is entitled to great weight and will not be interfered with unless clearly erroneous, equivalent to an abuse of discretion. * * *' (219 Ala. [at] 115, 121 So. [at] 406)."
Mims v. Mississippi Power Co., 282 Ala. 90, 92-93, 209 So.2d 375, 377-78 (1968).
*42 The statutory grounds for challenge for cause are set out in Ala.Code 1975, § 12-16-150:
"It is good ground for challenge of a juror by either party:
"(1) That the person has not been a resident householder or freeholder of the county for the last preceding six months.
"(2) That he is not a citizen of Alabama.
"(3) That he has been indicted within the last 12 months for felony or an offense of the same character as that with which the defendant is charged.
"(4) That he is connected by consanguinity within the ninth degree, or by affinity within the fifth degree, computed according to the rules of the civil law, either with the defendant or with the prosecutor or the person alleged to be injured.
"(5) That he has been convicted of a felony.
"(6) That he has an interest in the conviction or acquittal of the defendant or has made any promise or given any assurance that he will convict or acquit the defendant.
"(7) That he has a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict.
"(8) That he is under 19 years of age.
"(9) That he is of unsound mind.
"(10) That he is a witness for the other party.
"(11) That the juror, in any civil case, is plaintiff or defendant in a case which stands for trial during the week he is challenged or is related by consanguinity within the ninth degree or by affinity within the fifth degree, computed according to the rules of the civil law, to any attorney in the case to be tried or is a partner in business with any party to such case.
"(12) That the juror, in any civil case, is an officer, employee or stockholder of or, in case of a mutual company, is the holder of a policy of insurance with an insurance company indemnifying any party to the case against liability in whole or in part or holding a subrogation claim to any portion of the proceeds of the claim sued on or being otherwise financially interested in the result of the case."
The common law grounds are set out in Brown v. Woolverton, 219 Ala. 112, 114-15, 121 So. 404, 406 (1928):
"`At common law the grounds for challenge were classified under four heads, as follows: (1) propter honoris respectum; as, if a lord of Parliament be impaneled on a jury, he may be challenged by either party, or he may challenge himself; (2) propter defectum; as if a juryman be an alien born, this is defect of birth; (3) propter affectum, as for suspicion of bias or partialitythis may be either a principal challenge, or to the favor; (4) challenges propter delictum are for some misdemeanor or crime which affects the juror's credit and renders him infamous, as for conviction of treason, felony, perjury, or conspiracy. A challenge propter affectum is of two kinds: a challenge to the favor and for principal cause.' 16 R.C.L. 254."
I acknowledge that this Court recognizes that an employee of a party is subject to a challenge for cause; however, the reason underlying the common law rule that an employee could be challenged for cause was grounded in the belief that the employee might be biased in favor of his employer. Thus, the challenge for cause allowed the party suing the employer a way of removing employees of a party from the venire.
I would not grant a new trial in this case, because I do not believe that a new trial is justified. See my dissent in Wood v. Woodham, 561 So.2d 224 (Ala.1989), in which I stated that new trials should not be awarded because this Court disagrees with the trial judge's determination regarding a challenge for cause. I would point out, however, that a majority of this Court did grant a new trial in Wood v. Woodham. I adhere to the views expressed in my dissent in that case, and I concur in the result reached here which I believe is consistent with my dissenting view.
NOTES
[1] Dansby also alleged a violation of the Locomotive Boiler Inspection Act, 45 U.S.C. §§ 22-34, but he voluntarily dismissed that claim at trial.