770 So.2d 49 (2000)
Lorene HUTCHINS, as administratrix of the estate of Marvin Hutchins, deceased
v.
DCH REGIONAL MEDICAL CENTER et al.
DCH Healthcare Authority, Inc., d/b/a DCH Regional Medical Center
v.
Lorene Hutchins, as administratrix of the estate of Marvin Hutchins, deceased.
1972266 and 1972298.
Supreme Court of Alabama.
February 11, 2000.
Rehearing Denied April 28, 2000.
*50 M. Clay Alspaugh of Hogan, Smith & Alspaugh, P.C., Birmingham, for appellant/cross appellee Lorene M. Hutchins.
James J. Jenkins and Bryan P. Winter of Phelps, Jenkins Gibson & Fowler, L.L.P., Tuscaloosa, for appellee/cross appellant DCH Regional Medical Center.
W. Stancil Starnes, Laura H. Peck, and Sharon A. Woodard of Starnes & Atchison, L.L.P., Birmingham, for appellee H. Joseph Falgout, M.D.
PER CURIAM.
Lorene Hutchins, as administratrix of the estate of Marvin Hutchins, deceased, sued DCH Healthcare Authority, Inc., d/b/a DCH Regional Medical Center ("DCH"), and 13 fictitiously named defendants, alleging that the defendants had *51 provided negligent or wanton medical treatment to her husband during his hospitalization at DCH, and that the negligent or wanton medical treatment had caused his death. Specifically, she alleged that the defendants had negligently or wantonly failed to: prevent her husband from becoming infected, diagnose his infection, and treat his infection and complications. She further alleged that the defendants had failed to provide adequately trained personnel to treat her husband. She also stated claims alleging breach of contract and fraud.
On May 19, 1994, the plaintiff amended her complaint to substitute Harold Joseph Falgout, M.D., in place of two fictitiously named defendants. There subsequently arose a dispute over the discoverability and admissibility of certain hospital documents and a videotape concerning the frequency with which patients at DCH had acquired hospital-borne infections. The trial judge denied the plaintiff access to some of the information she requested, holding that it was privileged and thus protected from discovery. The case was subsequently submitted to a jury, which found in favor of DCH and Dr. Falgout. The court entered a judgment in accordance with that verdict.
For the reasons discussed below, we affirm the judgment insofar as it relates to Dr. Falgout, but insofar as it relates to DCH we reverse the judgment and remand for a new trial. Because of the nature of the legal issues presented by these appeals, we need not explain in detail the medical causes of Mr. Hutchins's death. However, a statement of some of the basic facts will aid the reader in understanding the reasons for our judgment.

Facts
In April 1992, Marvin Hutchins was referred to Dr. Falgout by another physician because Hutchins was suffering from hemorrhoid problems that had not responded to previous treatments. Dr. Falgout examined Hutchins and recommended that a hemorrhoidectomy be performed. Hutchins agreed, and the surgery was scheduled for April 15, 1992, to be performed at DCH.
On the day of the surgery, nurse Jacqueline Wilkins applied to Hutchins a solution designed to remove dirt, oil, and microbes from the skin and thereby reduce the possibility of infection. Dr. Falgout performed the surgery, which was completed without any immediately apparent complications. In the days following the surgery, however, Hutchins developed and maintained a low-grade fever. He also suffered from urinary retention, nausea, vomiting, and abdominal pain. Redness and swelling in the area of the surgery also appeared. On April 20, with the other symptoms persisting, Hutchins also began to suffer chest pain and shortness of breath. Dr. Falgout was conducting surgery that afternoon; he asked his partner, Dr. John O. Waites, to check Hutchins's progress. Dr. Waites ordered that Hutchins be treated with antibiotic medication.
On the evening of April 20, Dr. Falgout checked Hutchins and found that the skin around the site of the surgery appeared to be infected. Dr. Falgout ordered treatment with antibiotics, but Hutchins nonetheless developed a serious respiratory problem and a number of other problems. Those problems eventually caused his death, which occurred on May 19, 1992.
The jury returned a verdict in favor of DCH and Dr. Falgout. After the court had entered a judgment in accordance with that verdict, the plaintiff became aware that another patient of Dr. Falgout's had suffered a betahemolytic group A strep infection, the same kind of infection Hutchins had suffered from. The plaintiff moved for a new trial in part on the basis of newly discovered evidence. The trial court denied that motion. The plaintiff appealed. DCH cross-appealed.

Discussion

I.
DCH cross-appeals, arguing that the trial court erred in denying its motion *52 for a judgment as a matter of law.[1] We disagree.
This Court has recently held:
"When reviewing a ruling on a motion for a [judgment as a matter of law (`JML')], this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented substantial evidence to allow the factual issue to be submitted to the jury for resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). See, also, § 12-21-12, Ala. Code 1975, and West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A motion for JML `is properly denied where there exists any conflict in the evidence for consideration by the jury.' Cloverleaf Plaza, Inc. v. Cooper & Co., 565 So.2d 1147, 1149 (Ala. 1990). In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences from that evidence as the jury would have been free to draw."
Daniels v. East Alabama Paving, Inc., 740 So.2d 1033 (Ala.1999).
DCH argues that the plaintiff failed to present substantial evidence indicating that nurse Wilkins breached the standard of care in her preoperative preparation of the site of Hutchins's surgery. Further, DCH argues that even if nurse Wilkins did fail to meet the standard of care, the plaintiff did not present substantial evidence indicating that nurse Wilkins's treatment of Hutchins proximately caused his infection and, ultimately, his death.
Deborah Baugh, a registered nurse the plaintiff called as an expert witness, testified that the appropriate standard of medical care would require that the site of Hutchins's surgery be prepared by "scrubbing" it with a Betadine (or similar) solution for a period of approximately five minutes. Next, she testified, the site should be "painted" with the same, or a similar, solution. She testified that, from her review of Hutchins's medical records, it did not appear that nurse Wilkins had completed both steps of the preparation process, because the medical records indicated that the preparation was completed in eight minutes. She testified that it would be very difficult to complete the necessary preparation in the time indicated by the medical record. Nurse Wilkins testified in her affidavit that she did perform both the "scrub" and the "paint" and that it was the "scrubbing" that she referred to in the medical record when she made the time notation. Nurse Baugh admitted that, if one accepted the affidavit testimony of nurse Wilkins, then nurse Wilkins met the standard of care.
The plaintiff called Dr. Michael Kennedy to testify as an expert witness on the issue of causation. He testified:
"Q. Do you have an opinion as to the more likely method of inoculation of this man with ... this bug?
"A. Well, there are a couple of things that happened in the same area where this infection developed. He had an operative procedure and he has repeated catheterizations, and it may have come from the catheterization or it may have come from the operative procedure and I don't think we will ever be able to tell which. By the time it was picked up, the area including the bladder and the urine in the bladder was infected.
"Q. Hypothetically, if in fact the operative sitethe area of the operation including the anus, the buttocks, the perineal area, even into the backwas not properly and within the standard of care surgically presented, could *53 that have been a source of the bacteria that infected this man?
". . . .
"A. I think it's possible, yes.
"Q. If in fact that was the only deviation everything else was in keeping with the standard of care and there was no other potential sourcewould it be a probability as opposed to a possibility that that would be an infective-site source?
"A. In the absence of other factors, yes.
"Q. Did you see any indication that this man was a carrier of this particular bug?
"A. No.
"Q. Did you see anything in the history that made him predisposed to development of an infection?
"A. No.
"Q. Did you see anything in the records that indicated an insertion of the catheter in any manner except in a sterile manner?
"A. I didn't see anything that would indicate other than a sterile manner.
"Q. And a sterile manner is the proper way to insert a catheter such as was inserted in this man, correct?
"A. Yes."
Although we recognize that this is a close case, we must apply the rule that we draw all reasonable inferences in favor of the nonmovant. Taking into account the testimony of nurse Baugh and Dr. Kennedy, we conclude that the plaintiff presented substantial evidence from which a reasonable juror could conclude that DCH, through nurse Wilkins, breached the standard of care and that Hutchins's infection and subsequent death were the proximate results of that breach of the standard of care. Accordingly, the trial judge properly denied DCH's motion for a judgment as a matter of law.

II.
The plaintiff argues that the trial court erred in denying her challenges for cause directed toward certain prospective jurors. We apply an abuse-of-discretion standard in our review of this claim. We have said before: "The trial court is vested with broad discretion in determining whether to sustain challenges for cause, and the trial court's decision will not be interfered with unless clearly erroneous." Black Belt Wood Co. v. Sessions, 514 So.2d 1249, 1255-56 (Ala.1986).

(A)
The plaintiff argues that the trial judge erred in denying her challenge for cause directed toward prospective juror R.T. That prospective juror testified that he knew Dr. and Mrs. Falgout through church:
"Q. [By plaintiffs counsel] Sounds like you may have some concern about whether or not you could be straight down the line simply because you do know something about him and your relationship with him. Am I right about that?
"A. [By R.T.] Possibly.
"Q. As you stand here, is there some concernI know you would try to be fair. But there is some concern deep down for whatever reason you might not be able to call it right or left? Is that right? Right down the middle, is that right?"
"A. That's right."
However, when questioned by Dr. Falgout's attorney, R.T. testified:
"Q. ... Your relationship with [Dr. Falgout at church], do you think it would interfere with your ability to perform your oath as a juror to apply the facts and the law as the Court gives it to you and render a verdict?
"A. I don't believe it would.
"Q. You don't believe it would?
"A. No.

*54 "Q. You think you could listen to the law as the judge gives it to you, listen to the facts and impartially apply the law to those facts as you find them to be?
"A. I believe I could."
When the plaintiff's counsel challenged R.T. for cause, the trial judge denied the challenge. The plaintiff argues that the trial judge erred, citing Knop v. McCain, 561 So.2d 229 (Ala.1989), and Wood v. Woodham, 561 So.2d 224 (Ala.1989), companion cases in which this Court addressed the standards a trial judge should apply in determining whether to grant a challenge for cause. In Knop, this Court stated:
"Ultimately, the test to be applied is whether the juror can set aside [his or] her opinions and try the case fairly and impartially, according to the law and the evidence. [Citations omitted.] This determination... is to be based on the juror's answers and demeanor and is within the sound discretion of the trial judge. Thus, a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence."
Knop, 561 So.2d at 232. This Court also held:
"This Court cannot and does not seek to supplant the functions of the trial court in evaluating the personal demeanor of the jurors. Once a juror makes an initial statement that is vague, ambiguous, equivocal, uncertain, or unclear or that shows confusion, it is the trial judge's function to question the juror further, so as to ascertain whether the juror can be impartial. However, once a juror indicates initially that he or she is biased or prejudiced or has deep-seated impressions, so as to show that he or she cannot be neutral, objective, or impartial, the challenge for cause must be granted."
Id. at 234. After reviewing R.T.'s answers, we conclude that his statements indicating possible bias were ambiguous. However, given R.T.'s responses to the clarifying questions asked by Dr. Falgout's attorney, we cannot conclude that the trial judge abused his discretion in denying the challenge for cause directed toward R.T.

(B)
The plaintiff also argues that the trial court erred in denying her challenges for cause directed toward prospective jurors J.B. and K.B., both of whom stated on voir dire examination that they were employed by DCH. J.B. said she did not know Dr. Falgout. K.B. said she knew him as a "passing acquaintance." K.B. also had a "passing acquaintanceship" with two persons expected to be called as witnesses. When the plaintiff challenged J.B. and K.B. for cause, the trial judge denied the challenges.
The plaintiff argues that the trial court should have granted her causal challenges of J.B. and K.B. because those two jurors were employees of the defendant DCH. The plaintiff cites Kendrick v. Birmingham Southern Railroad Co., 254 Ala. 313, 48 So.2d 320 (1950), for the proposition that a juror's employment by one of the parties is grounds for a challenge for cause. In that case, this Court held: "An employee is incompetent to serve as a juror in a cause involving the interest of the employer and is, therefore, subject to challenge for cause." 254 Ala. at 322, 48 So.2d at 327. This Court has more recently discussed this issue in CSX Transportation, Inc. v. Dansby, 659 So.2d 35, 39-40 (Ala.1995):
"In addition to the statutory challenges for cause specified by Ala.Code 1975, § 12-16-150, this Court also recognizes the common law challenges for cause. Wallace v. Alabama Power Co., 497 So.2d 450 (Ala.1986). A common law challenge for cause must entail `"some matter which imports absolute bias or favor, and leaves nothing for the discretion of the court."` Wallace, supra, quoting Brown v. Woolverton, 219 *55 Ala. 112, 115, 121 So. 404, 406 (1928). At common law, an employee of a party was subject to challenge for cause. Kendrick v. Birmingham S. [R.R.], 254 Ala. 313, 48 So.2d 320 (1950); Citizens' Light, Heat & Power Co. v. Lee, 182 Ala. 561, 62 So. 199 (1913).
"However, we hold that the better view is that if the employer makes the challenge, it must make a showing of prejudice or bias on the part of the its employee, when it challenges for cause the employee's qualifications for serving as a juror in its case. If the employer can justify its motion by proving that the employee will be prejudiced in some manner as a trier of fact, then the trial court should strike that prospective juror for cause. Without such proof, the trial court should not strike the employee for cause. The party opposing the employer of the prospective juror, however, should be allowed a challenge for cause against the prospective juror, under the rule stated in Kendrick, supra, without a showing of bias or prejudice.

"Our two-pronged approach to this issue is based upon a recognition of the unique relationship between an employer and its employee. Undoubtedly, this relationship implies a partiality on the part of that employee in favor of the employer. We must presume that the employer and the employee have a friendly working relationship. If such a relationship does not exist, then the employer, to have a challenge for cause, must show the court what the true relationship is. Conversely, the party opposing the employer should not be required to show prejudice in order to challenge the employee; when that party challenges the employee, a prejudice in favor of the employer must be presumed to exist, and the trial court is consequently left without discretion in ruling on the challenge for cause."

(Emphasis added.)
Under our rule, as quoted above from Dansby, the trial judge had no discretion to deny the plaintiff's challenge for cause directed toward J.B. and K.B., given that they were employees of the defendant DCH. Accordingly, we reverse the judgment insofar as it related to DCH and remand for a new trial.
Dr. Falgout argues that even if we reverse the judgment as it relates to DCH, that fact would not require that we reverse the judgment insofar as it relates to him. We agree. See Beneficial Management Corp. of America v. Evans, 421 So.2d 92 (Ala.1982). There was no employer-employee relationship shown between Dr. Falgout and these two jurors, and the plaintiff has shown no reason why, under the tests discussed above, it would have been an abuse of the trial judge's discretion to deny the challenges had Dr. Falgout been the only defendant. Thus, we conclude that there was no error in having J.B. and K.B. participate as jurors on the claims against him.
Our reversal of the judgment as it relates to DCHbased on the denial of these challenges for causedoes not lead to a remand for a new trial of the claims against Dr. Falgout. Therefore, we must consider the remaining issues raised on the plaintiff's appeal as they relate to Dr. Falgout.

III.
We now consider the plaintiff's argument that the trial court erred in charging the jury, over her objection, on the law relating to "substantial evidence." Specifically, she argues that the trial court's charging the jury in that regard violated her constitutional right to equal protection under the law, because this Court has previously ruled, in Ex parte Gradford, 699 So.2d 149 (Ala.1997), that it was reversible error to charge a jury on substantial evidence, and because, in medical-liability cases, the Legislature has required that the judge give such a charge. In other words, she argues that the Legislature has imposed a restriction on plaintiffs in medical-malpractice *56 cases that, under Gradford, may not be imposed on other plaintiffs.
In § 6-5-548(a), Ala.Code 1975, the Legislature specifically provided that in medical-liability cases "the plaintiff shall have the burden of proving [the defendant's liability] by substantial evidence." In § 6-5-549, the Legislature provided:
"In the case of a jury trial, the jury shall be instructed that in order to return a verdict against a health care provider, the jury shall be reasonably satisfied by substantial evidence that the health care provider failed to comply with the standard of care and that such failure probably caused the injury or death in question."
(Emphasis added.)
As the plaintiff points out, however, in Gradford, a case that did not arise under the provisions of the Alabama Medical Liability Act, §§ 6-5-480, Ala.Code 1975, et seq., this Court held:
"Clearly, the substantial evidence rule pertains only to `rulings by the court' on the sufficiency of the evidence as presented by motions for summary judgment or motions for judgment as a matter of law (the current terminology; see Rule 50, Ala. R. Civ. P.)."
699 So.2d at 150. This Court also held:
"[J]ust as it is not error not to charge on `substantial evidence,' it is error to give a charge telling the jury that it must be `reasonably satisfied by substantial evidence.'
"The giving of such a charge is error, both because the substantial evidence rule has no place in the jury's deliberations and because the charge has a tendency to mislead and confuse the jury. Although the circuit court here instructed the jury on the legal definition of `substantial evidence,' the repeated use of that term may have confused the jury because of the ambiguity of the word `substantial.'"
699 So.2d at 151.
In this present case, which did arise under the provisions of the Alabama Medical Liability Act, the trial judge charged the jury in accordance with § 6-5-549,[2] and the plaintiff preserved her objection to *57 the charges.[3] The question then, is whether the statute providing that a jury in a medical-malpractice case must be instructed on the "substantial-evidence rule" violates the equal-protection rights of a medical-malpractice plaintiff. We conclude that it does not.
This Court has stated the test to be applied to determine whether a statute violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution:
"The United States Supreme Court has established two tests to determine *58 whether a statute draws a classification which violates the Equal Protection Clause of the Fourteenth Amendment or whether that statute denies a person substantive due process of law. The Court applies the `strict scrutiny test' where the classification is based on `suspect criteria' or affects some fundamental right. The traditional indicia of a suspect class are: (1) A class determined by characteristics which are solely an accident of birth, Frontiero v. Richardson, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (197[3]); and (2) A class `saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process,' San Antonio [Independent] School Dist. v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (197[3]). The classifications which the United States Supreme Court has held are suspect have been drawn along racial lines, McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), or were based on an individual's alienage, Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). The Court has recognized as fundamental, the right to vote and to associate freely, Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); the right to travel interstate, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); and those familial rights [matters relating to marriage, procreation, contraception, family relationships, and child rearing and education] which fall within a recognized `zone of privacy.' [For a case which] involves neither a `suspect class' nor a `fundamental right,' the rational basis test is the proper test to apply to either a substantive due process challenge or an equal protection challenge. Under the rational basis test the Court asks:
(a) Whether the classification furthers a proper governmental purpose, and (b) whether the classification is rationally related to that purpose."
Gideon v. Alabama State Ethics Comm'n, 379 So.2d 570, 573-74 (Ala.1980).
This case involves neither a "suspect class" nor a "fundamental right," so we apply the rational-basis test to the plaintiff's equal-protection challenge. Thus, we must determine (a) whether the classification furthers a proper governmental purpose, and (b) whether the classification is rationally related to that purpose.
The Legislature, in § 6-5-540, Ala.Code 1975, explicitly stated its purpose for enacting the Alabama Medical Liability Act:
"It is hereby declared by the Legislature of the State of Alabama that a crisis threatens the delivery of medical services to the people of Alabama and the health and safety of the citizens of this state are in jeopardy. In accordance with the previous declaration of the legislature contained in Act 513 of the Regular Session of the 1975 Alabama Legislature it is the declared intent of this legislature to insure that quality medical services continue to be available at reasonable costs to the citizens of the State of Alabama. This legislature finds and declares that the increasing threat of legal actions for alleged medical injury causes and contributes to an increase in health care costs and places a heavy burden upon those who can least afford such increases, and that the threat of such actions contributes to expensive medical procedures to be performed by physicians and other health care providers which otherwise would not be considered necessary, and that the spiraling costs and decreasing availability of essential medical services caused by the threat of such litigation constitutes a danger to the health and safety of the citizens of this state, and that this article should be given effect immediately to help control the spiraling cost of health *59 care and to insure its continued availability."
(Emphasis added.) We hold that the Legislature's stated purpose of "[ensuring] that quality medical services continue to be available at reasonable costs to the citizens of the State of Alabama" is a legitimate goal of state government.
We next consider the second question in the equal-protection analysis outlined above, whether the Legislature's classification is rationally related to that goal. The Legislature stated in § 6-5-540 that "a crisis threatens the delivery of medical services to the people of Alabama and the health and safety of the citizens of this state are in jeopardy" and that "the increasing threat of legal actions for alleged medical injury causes and contributes to an increase in health care costs." Because in the Alabama Medical Liability Act of 1987 (see § 1, Act No. 87-189, Ala. Acts 1987), codified at § 6-5-540 the Legislature explicitly stated that it perceived a danger that legal actions were driving up the costs of health-care services, and because it stated this perceived danger in the same section in which it stated that its intent in adopting the Act was to ensure "that quality medical services continue to be available at reasonable costs," we conclude that the Legislature perceived a direct relationship between the costs of litigation in medical-malpractice cases and its goal of ensuring that Alabama citizens would have available quality health-care services at reasonable costs. Therefore, we conclude that a rational legislator could have concluded that a legislatively determined standard of proof and a legislatively prescribed instruction to the jury regarding that burden of proof would aid in achieving the Legislature's goal. Accordingly, we hold that the challenged statute does not violate the Equal Protection Clause of the United States Constitution.
Does the challenged statute violate the plaintiff's right to equal protection under the Constitution of Alabama? The plaintiff argues that it does. The question whether §§ 1, 6, and 22 of Article I, Constitution of Alabama 1901, combine to guarantee the citizens of Alabama equal protection under the laws remains in dispute. See Black v. Pike County Comm'n, 360 So.2d 303 (Ala.1978); Ex parte Jackson, 516 So.2d 768 (Ala.1986), and Ex parte Branch, 526 So.2d 609 (Ala.1987) (implying that those provisions do provide for equal protection); but see Ex parte Melof, 735 So.2d 1172 (Ala.1999). In this case, however, that dispute is rendered academic.
Even relying on that line of cases holding that the Alabama Constitution does provide for equal protection, we would still conclude that the statute the plaintiff challenges does not violate that constitution. The plaintiff states no reason, and we are aware of no reason, that our analysis of the plaintiff's equal-protection issue raised under the United States Constitution should not be equally applicable to her equal-protection issue raised under the Alabama Constitution. Further, we note that when this Court reviews a statute for the purposes of determining whether it violates the Alabama Constitution, we apply a presumption in favor of constitutionality and will seek to sustain the enactment of the Legislature, a coequal branch of government. Reed v. Brunson, 527 So.2d 102 (Ala.1988). We have long followed the rule established in Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944):
"[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law."
The appellant has not shown it to be "clear beyond reasonable doubt" that the challenged *60 statute violates the Alabama Constitution. Therefore, we consider our analysis stated above regarding the plaintiff's challenge based on the United States Constitution to apply equally to her challenge to § 6-5-549 based on the Alabama Constitution. See Plitt v. Griggs, 585 So.2d 1317 (Ala.1991); Jefferson County v. Braswell, 407 So.2d 115 (Ala.1981).

IV.
The plaintiff argues that the trial judge abused his discretion in denying her access to certain information that he ruled was not discoverable. In Interrogatory 9, she requested information concerning certain kinds of infections that had occurred at DCH since January 1, 1988, including the names of all patients who had suffered the infections and the dates that those patients were hospitalized. She also requested the production of those patients' medical records and any internal hospital reports concerning those infections. DCH argued that the matters in dispute were protected by §§ 22-21-8 and 34-24-58, Ala.Code 1975, creating the so-called "quality-assurance privilege," and by the attorney-client privilege. In response, the plaintiff challenged the constitutionality of § 22-21-8.
This issue is not relevant to the plaintiff's claim against Dr. Falgout; it is relevant only to the claim against DCH. Because we have already concluded that this case is to be remanded for a new trial of the claims against DCH, we need not consider this issue. Should either party take dispute with the rulings of the trial judge on discovery matters in the course of the new trial, it will be free to seek appellate review of those rulings at the appropriate time.

V.
The plaintiff argues that the trial court erred in denying her motion for a new trial of her claims against Dr. Falgout; that motion was based on a claim of newly discovered evidence. The test trial judges apply in determining whether to grant a motion for a new trial on that basis is as follows:
"First, the party seeking a new trial must show that in spite of the exercise of due diligence, she did not discover the evidence until after the trial. Fries v. Acme White Lead & Color Works, 201 Ala. 613, 614, 79 So. 45, 46 (1918). Second, the evidence must be of such quality `as to render probable a different result on the retrial of the case.' Id."
Register Propane Gas Co. v. Whatley, 688 So.2d 225, 226 (Ala.1996). The question whether to grant a new trial lies within the sound discretion of the trial judge and a ruling on that question will be reversed by this Court only upon a showing of an abuse of discretion. Id.
Did the plaintiff exercise due diligence in an effort to learn of the information that she says she discovered after the trial had concluded? As Dr. Falgout points out, the plaintiff did not ask him in his deposition or through her interrogatories whether he had previously treated any patient who suffered from a betahemolytic group A strep infection. The plaintiff responds by saying that Dr. Falgout denied being aware of a number of infections that had occurred prior to his treatment of Hutchins and that were referred to in a June 1994 article in a Tuscaloosa newspaper. She argues that that article referred to one of Dr. Falgout's previous patients. The article does not list patients by name, but instead generally refers to a group of cases of infection. Dr. Falgout responded to the article by stating that when he treated Hutchins he was not aware of those previous cases of infection. The plaintiff argues that Dr. Falgout's answers to questions she put to him in her cross-examination on this issue were evasive and that in answering he played "medical word games." Based on what is before us, however, we cannot conclude that Dr. Falgout's testimony was untrue. When asked whether he had ever heard of any previous patients at DCH who suffered from such an infection, he answered that he had not, "unless they were [his] patients." He also testified that he had never previously treated a patient "that had betahemolytic *61 bacteremia or sepsis." Based on our review of the transcript and of the parties' arguments, we cannot conclude that Dr. Falgout's answers were untruthful, because it appears that the person discovered after the end of the trial had not been septic. Accordingly, we conclude that the trial court could have concluded that the failure to discover the existence of the former patient who had suffered an infection but had not become septic was the result of a lack of due diligence. See Pacifico v. Jackson, 562 So.2d 174 (Ala. 1990). Thus, we conclude that it was not an abuse of discretion for the trial court to deny the plaintiffs motion for a new trial.[4]

Conclusion
In light of the above, we reverse the judgment insofar as it was in favor of DCH and remand for a new trial on the claims against DCH. We affirm the judgment insofar as it was in favor of Dr. Falgout.
1972266AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
1972298AFFIRMED.
Part I: HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, LYONS, BROWN, and JOHNSTONE, JJ., concur.
ENGLAND, J., recuses himself.
Part II(A): HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, LYONS, BROWN, and JOHNSTONE, JJ., concur.
ENGLAND, J., recuses himself.
Part II(B): HOOPER, C.J., and COOK, LYONS, BROWN, and JOHNSTONE, JJ., concur.
MADDOX, HOUSTON, and SEE, JJ., dissent.
ENGLAND, J., recuses himself.
Part III: HOOPER, C.J., concurs.
MADDOX and SEE, JJ., concur specially.
HOUSTON, COOK, LYONS, and BROWN, JJ., concur in the result.
JOHNSTONE, J., dissents.
ENGLAND, J., recuses himself.
Part IV: HOOPER, C.J., and
MADDOX, HOUSTON, COOK, LYONS, and BROWN, JJ. concur.
SEE and JOHNSTONE, JJ., express no opinion.
ENGLAND, J., recuses himself.
Part IV: HOOPER, C.J., and MADDOX, HOUSTON, SEE, LYONS, and BROWN, JJ., concur.
JOHNSTONE, J., concurs in the result.
COOK, J., expresses no opinion.
ENGLAND, J., recuses himself.
MADDOX, Justice (concurring in Parts I, II(A), III, IV, and V; and dissenting from Part II(B)).
I concur except as to Part II(B), which discusses the challenge of jurors J.B. and K.B. for cause. As to Part II(B), I dissent. With regard to the rule discussed and applied in that part of the opinion, see my special writing in CSX Transportation, Inc. v. Dansby, 659 So.2d 35 (Ala.1995).
As to Part III, rejecting the plaintiffs argument that § 6-5-549, Ala.Code 1975, is unconstitutional, I offer an additional reason why I conclude that the appellant's argument is without merit. I dissented in Ex parte Gradford, 699 So.2d 149 (Ala. 1997), joining Justice Houston's special writing, which stated:
"Although I agree with the majority that the jury did not need to be told that the plaintiff had to prove his case by `substantial evidence,' I nonetheless do not share the majority's concerns that the jurors could reasonably have been confused or misled by having that information."
699 So.2d at 154 (Houston, J., dissenting). I believed when I joined Justice Houston's *62 dissent in Gradford, and I believe now, that it is not necessarily reversible error for a trial judge to instruct a jury on substantial evidence. I would, therefore, overrule Gradford. If Gradford were overruled, there would be no basis for the appellant's equal-protection argument.
HOUSTON, J., concurs.
HOUSTON, Justice (concurring in Parts I, II(A), IV, and V; concurring in the result as to Part III; and dissenting as to Part II(B)).
I concur in Parts I, II(A), IV, and V; I concur in the result as to Part III; and I dissent as to Part II(B).
Sections 1, 6, and 22 of Article I of our present constitution, the Constitution of Alabama of 1901, do not combine to guarantee the citizens of Alabama equal protection of the laws. Ex parte Melof 735 So.2d 1172 (Ala.1999); American Legion Post No. 57 v. Leahey, 681 So.2d 1337, 1347-48 (Ala.1996) (Houston, J., dissenting); Smith v. Schulte, 671 So.2d 1334, 1347-48 (Ala.1995) (Maddox, J., dissenting); Pinto v. Alabama Coalition for Equity, 662 So.2d 894, 901-10 (Ala.1995) (Houston, J., concurring in the result); Ex parte St. Vincent's Hosp., 652 So.2d 225, 230-31 (Ala.1994) (Houston, J., concurring specially); Moore v. Mobile Infirmary Ass'n, 592 So.2d 156, 174-78 (Ala.1991) (Houston, J., concurring in the result).
I concur in Justice Maddox's special writing insofar as it addresses Part II(B).
COOK, Justice (concurring as to Parts I, II(A), II(B), and IV; concurring in the result as to Part III; and expressing no opinion as to Part V).
I concur in Parts I, II(A), II(B), and IV. I concur in the result as to Part III. I express no opinion as to Part V.
SEE, Justice (concurring in Parts I, II(A), III, and V; dissenting from Part II(B); and expressing no opinion as to Part IV).
In Part II(B) of the main opinion, a majority concludes that this Court must reverse the judgment as to DCH and remand for a new trial because the trial court denied the plaintiff's challenges for cause directed to two particular potential jurors. The potential jurors were employed by DCHone at the DCH emergency room, and the other at a DCH-owned outpatient facility in Northport. The plaintiff concedes that both potential jurors stated that they could render a fair and impartial verdict; and the plaintiff exercised two of her peremptory challenges to remove these two potential jurors from the panel. The plaintiff offers no evidence to indicate that the jury ultimately selected was not a fair and impartial one. The use of two of her peremptory challenges, therefore, is the only possible prejudice that the plaintiff suffered.
To order a new trial requires the parties and the court to do again what they have already done; and to the public, the witnesses, and jurors it increases the cost and inconvenience of what has already been a costly and inconvenient process. Therefore, granting a new trial is an extreme remedy. See, e.g., Britain v. State, 518 So.2d 198, 203 (Ala.Crim.App.1987). Absent some other showing of prejudice, the plaintiff's use of two peremptory strikes to remove potential jurors that the trial court should have removed for cause does not warrant the extreme remedy of granting a new trial. See Wood v. Woodham, 561 So.2d 224, 228 (Ala.1989) (Maddox, J., dissenting) (stating that "there has been no showing of any unfairness or prejudice towards the plaintiff that would taint the jury's verdict," and that a new trial should not be granted "where the only possible prejudice shown is that a party may have had to use a peremptory strike to eliminate a juror that that party may not have wanted"). For this reason, I dissent from Part II(B).
Part III of the main opinion states that the statutory requirement that the court *63 give a "substantial-evidence" instruction (see the Alabama Medical Liability Act, Ala.Code 1975, § 6-5-549) is not unconstitutional. As Justice Houston stated in his dissenting opinion in Ex parte Gradford, 699 So.2d 149, 153 (Ala.1997) (Houston, J., dissenting), in which I concurred, to give a "substantial-evidence" instruction when such an instruction is not mandated by statute is error, but not necessarily reversible error. Certainly it is not reversible error to give such an instruction that is mandated by statute.
JOHNSTONE, Justice (concurring in Parts I, II(A), and II(B); concurring in the result of Part V; dissenting from Part III; and expressing no opinion as to Part IV).
I concur in Parts I and II(A) and (B). I dissent from Part III. I express no opinion on Part IV. Finally, I concur in the result of Part V because the newly discovered evidence is not such that we can hold that the trial judge abused his discretion in not finding that the newly discovered evidence probably would cause the jury to return a verdict in favor of the plaintiff against the doctor in a new trial. See Campbell v. Williams, 638 So.2d 804, 814 (Ala.1994).
NOTES
[1] See Rule 50, Ala. R. Civ. P., renaming a motion for a directed verdict a "motion for judgment as a matter of law."
[2] The trial judge charged the jury as follows:

"Now, remember, I told you that that is what we call a medical-malpractice case, and I told you that in those cases what the plaintiff's burden of proof is and that the plaintiff must prove by substantial evidence: one, the applicable standard of care; two, a breach of that standard of care; and three, that the plaintiff suffered damages as a result of the alleged breach."
(R. at 1564; emphasis added.)
"If you are reasonably satisfied from the evidence in this case that both of the defendants were negligent and that that negligence concurred and combined to proximately cause the injuries and damages claimed by the plaintiff, then each defendant is liable to the plaintiff. ...
". . . .
"Now, in giving you the charge regarding concurring and combining negligence of the defendants, I said if you are reasonably satisfied. Well, if you are reasonably satisfied by substantial evidence of the negligence of the breach of the applicable standard of care, then you can find a claim find for the plaintiff against both defendants."
(R. at 1566-67; emphasis added.) With regard to the claim against Dr. Falgout, the trial judge charged:
"As I said before in respondingin giving you the law with respect to DCH, the burden is on the plaintiff to prove to you by substantial evidence the truthfulness of all the elements of her claim before she would be entitled to recover against defendant Dr. Falgout. If you are reasonably satisfied that the plaintiff has met this burden of proof, then the plaintiff is entitled to recover in this case. If you are not reasonably satisfied by substantial evidence of the truthfulness of each element of the plaintiff's claim, then the plaintiff is not entitled to recover.
"Now, as I'veyou know, I've already previously stated to you what the definition of substantial evidence is, so I won't give you that definition again. But let me say this to you: Part of the plaintiff's burden of proof is to prove by substantial evidence that the defendant failed to exercise such reasonable skill, diligence, and care as other similarly situated physicians in the same general line of practice ordinarily have and exercise in like cases.
". . . .
"If you are not reasonably satisfied by substantial evidence of the truthfulness of each element of plaintiff's claim, then you need not consider the question of damages. On the other hand, if you are reasonably satisfied by substantial evidence of the truthfulness of each element of plaintiff's claim, then you should consider the question of damages."
(R. 1575-76; emphasis added.)
"To find liability ... [y]ou must be reasonably satisfied by substantial evidence that the negligence complained of by defendants probably caused the death of Marvin Hutchins in this case.
". . . .
"Now ladies and gentlemen, I'm going to give you the law with respect to damages in this case. Now ladies and gentlemen, you will recall that I told you that if you are not reasonably satisfied by substantial evidence of the truthfulness of each element of the plaintiff's claim, then you need not consider the question of damages. On the other hand, if you are reasonably satisfied by substantial evidence of the truthfulness of each element of plaintiff's claim, then you should consider the question of damages, and I'm not going to give you the law with respect to that."
(R. at 1579-80; emphasis added.)
"If after a full and fair consideration of all the evidence you are reasonably satisfied by substantial evidence therefrom that the plaintiff is entitled to recover against all defendants, then the form of your verdict should be as follows....
"On the other hand, if after a full and fair consideration of all the evidence you are not reasonably satisfied by substantial evidence therefrom that the plaintiff is entitled to recover against all defendants, then the form of your verdict should be as follows
. . .
"On the other hand, if after a full and fair consideration of all the evidence you are not reasonably satisfied by substantial evidence therefrom that the plaintiff is entitled to recover from one of the defendants but not entitled to recover against the other defendant, then you should use the form of verdict which reads as follows ...
"If after a full and fair consideration of all the evidence you are not reasonably satisfied by substantial evidence that the plaintiff is entitled to recover against any of the defendants, then you should use the form of verdict which reads as follows....
(R. at 1583-84; emphasis added.) In the portion of his instructions to the jury concerning the claims against DCH, the trial judge defined "substantial evidence" as follows:
"Substantial evidence means that character of evidence which would convince an unprejudiced thinking mind of the truth of the facts [toward] which the evidence is directed."
(R. at 1570; emphasis added.)
[3] Immediately after the trial judge concluded his instructions and dismissed the jury for a recess, he asked the attorneys to respond to his jury charges. The plaintiff's counsel stated:

"Additionally, we except to those portions of the Court's instruction dealing with substantial evidence as being the burden of proof on the plaintiff, and we would readopt our motion dealing with the constitutionality of the statute we have previously argued."
(R. at 1588.) The plaintiff's counsel had previously raised this same objection by an oral motion in limine and again at a conference at which the parties discussed proposed jury charges with the trial judge. At the charge conference, the plaintiff's counsel stated:
"We would like [to say] again for the record, a number of these charges that the Court will give deal with the burden of proof being by substantial evidence.... I filed a formal motion to challenge the constitutionality of these particular statutes based on the [Ex parte Gradford] opinion, 699 So.2d 149."
The trial judge responded:
"The Court is going to give the pattern [jury instruction], which requires the use of proof by substantial evidence. So the request is denied but the exception is duly noted."
(R. at 1461.) The plaintiff also had appropriately served notice upon the attorney general, pursuant to § 6-6-227, Ala.Code 1975, of her challenge to the constitutionality of § 6-5-549.
[4] Because we reach this conclusion, we need not address the other elements of the newtrial test.